**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| BRENT KING, Receiver, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00150-BP |
| | ) | |
| TEXAS INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT TEXAS INSURANCE COMPANY'S SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND AND FACTS AS ALLEGED IN THE PETITION ......................... 1

    A. The Plaintiff ............................................................................................ 1

    B. The Receiver's Petition for Damages ....................................................... 2

    C. The Private Management Liability Insurance Policy ................................. 4

III. STANDARD OF REVIEW ................................................................................... 6

IV. ARGUMENT ...................................................................................................... 7

    A. The TIC Policy Provides Third-Party Liability Coverage, Not First-Party Coverage ................................................................................................. 7

    B. The Receiver Lacks Standing Under Missouri Law to Assert a Direct Action for Coverage Against TIC .............................................................. 9

    C. Counts I and II Fail Because the TIC Owes No Contractual Obligation to the Receiver ........................................................................................... 11

    D. In Bringing This Improper Direct Action, the Receiver is Attempting to Usurp the Policy Proceeds and Deprive the Team Members of the Benefits of the Priority of Payments Provision Without Their Knowledge ....... 12

    E. Because Amendment of the Petition Would Be Futile, the Motion to Dismiss Should Be Granted With Prejudice ........................................... 13

V. CONCLUSION ................................................................................................. 14

i

# **TABLE OF AUTHORITIES**

## **Cases**

*Ashanti v. City of Golden Valley*, 666 F.3d 1148 (8th Cir. 2012)....................................................7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).........................................................................................6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..........................................................................6

*Bryan v. Peppers*, 175 S.W.3d 714 (Mo. Ct. App. 2005) ...........................................................10

*BSI Constructors, Inc. v. Hartford Fire Ins. Co.*, 705 F.3d 330 (8th Cir. 2013)..........................11

*Desmond v. American Ins. Co.*, 786 S.W.2d 144 (Mo. Ct. App. 1989)........................................10

*Dhyne v. State Farm Fire and Cas. Co.*, 188 S.W.3d 454 (Mo. banc 2006) ................................11

*Goodman v. Allstate Fire & Cas. Ins. Co.*, No. 22-00383-CV-W-GAF,
   2023 WL 6536145  (W.D. Mo. Aug. 14, 2023) .......................................................................11

*In re SVB Financial Group*, 650 B.R. 790, 2023 WL 3578447
   (Bankr. S.D.N.Y. May 22, 2023).............................................................................................12

*Miller v. Redwood Toxicology Lab, Inc.,* 688 F.3d 928 (8th Cir. 2012) .........................................7

*Rossi v. Arch Ins. Co.*, 60 F.4th 1189 (8th Cir. 2023)....................................................................7

*Scobee v. USAA Casualty Ins. Co.*, 2024 WL 3272925 (E.D. Mo. 2024) ...................................11

*State ex rel. Anderson v. Dinwiddie*, 224 S.W.2d 985 (Mo. banc 1949) .................................9, 10

*State Farm Mut. Auto. Ins. Co. v. Allen*, 744 S.W.2d 782 (Mo. banc 1988) ..........................10, 14

*Torti v. Hoag,* 868 F.3d 666 (8th Cir. 2017)..................................................................................6

*Truman Medical Center, Inc. v. Progressive Casualty Ins. Co.*, 597 S.W.3d 362
   (Mo. Ct. App. 2020) ...............................................................................................................8, 10

*Zean v. Fairview Health Servs.*, 858 F.3d 520 (8th Cir. 2017) .....................................................6

## **Statutes**

Mo. Stat. § 375.420................................................................................................................4

## **Treatises**

5B Wright & Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)....................................7

## **Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................................6, 7, 14

# I. <u>INTRODUCTION</u>

The Receiver's direct action against TIC is premised on the faulty assertion that the "TIC Policy"[1] provides first-party coverage to the Receiver based solely on allegations of Wrongful Acts of the "Team Members."[2] On the contrary, the relevant Insuring Agreement in the TIC Policy, Insuring Agreement A, provides third-party liability coverage for the Team Members for Loss resulting from <u>a Claim made against them</u> for their Wrongful Acts.[3] Therefore, under Missouri law, the Receiver lacks standing to bring a direct action against TIC under the TIC third-party liability Policy.

By bringing this disallowed direct action and seeking payment of the TIC Policy proceeds, the Receiver is improperly seeking to usurp the policy proceeds from the Team Members, while depriving them of the protection of the consent clause and priority of payments provision in the TIC Policy.

Finally, because the Receiver has not yet made a Claim against the Team Members that could even result in a Loss, any legally cognizable direct action is theoretical, premature, and not ripe.

Because these defects in the Petition are fatal and cannot be cured by amendment, TIC respectfully submits the Motion to Dismiss should be granted with prejudice.

# II. <u>BACKGROUND AND FACTS AS ALLEGED IN THE PETITION</u>

## A. <u>The Plaintiff</u>

Plaintiff, Receiver Brent King (the "Receiver"), was appointed by the state court pursuant to a lawsuit filed against the Insured Companies and other parties styled, *Enterprise Bank & Trust v. Mulungas II, LLC, et al.*, Case No. 2316-CV28464, now pending in the Circuit Court of Jackson

---

[1] See Section II.C, *infra*. A true and correct copy of the TIC Policy is attached hereto as Exhibit A (hereinafter "Ex. A").

[2] The TIC Policy defines the term "**Team Member**" to mean any "**Executive**" or "**Employee**" [Ex. A, p. 028], which includes Mr. Bradley J. Carlson, Ms. Christine Brandow, and Ms. Emilie Thill.

[3] This sleight of hand could not have been attempted by the Receiver had he attached the TIC Policy as an exhibit to the Petition or pled the specific terms of Insuring Agreement A.

County, Missouri at Independence ("the Enterprise Bank Case"). Enterprise Bank filed the Motion for Appointment of Receiver for the Defendants. [Petition ("Pet."), ¶ 4; see also the Stipulated Order, a true and correct copy of which is attached hereto as Exhibit B (hereinafter "Ex. B").]

The General Powers and Duties of the Receiver under paragraph (6)(d) of the Stipulated Order include the power to assert any rights, claims, or choses in action of the "Borrowers" and "Defendants."[4] [Ex. B, ¶ (6)(d).] The Stipulated Order then states, in part, in Section E. "Claims, Defenses," paragraph 17 "Assertion of Claims," that: "The Receiver shall use his reasonable efforts to collect the legally enforceable accounts receivable and other obligations owing to the Borrowers." [Ex. B, p. 010.]

## B.   The Receiver's Petition for Damages

The Petition for Damages ("Petition") is brought by the Receiver against TIC albeit, improperly. [Pet., ¶ 1 & 2.] The entities subject to the general receivership include the Named Insured, Empirical, and its subsidiaries Apex and Mag Trucks. [Pet., ¶ 4.] Empirical, Apex, and Mag are denoted as "Borrowers" in the Petition [Pet., ¶ 4], just as they are in the Stipulated Order which appointed the Receiver. According to paragraph 4 of the Petition, the Stipulated Order granted the Receiver full control and possession over all "Receivership Property," which "includes any right, title, and interest of the Borrowers." [Pet., ¶ 4.]

The Petition alleges TIC "issued an insurance policy providing coverage for director and officer liability," defined as the "Policy."[5] [Pet., ¶ 6.] Paragraph 11 adds that "[t]he Policy provides that Defendant will <u>pay losses</u> resulting from <u>claims against</u> any Team Member, Empirical Prime, or its subsidiaries." [Pet., ¶ 11 (emphasis added).]

---

[4] The Stipulated Order defines the terms "Borrowers" and "Defendants" to constitute: "Mulungas II, LLC, f/k/a Force Commercial Building, LLC, a Missouri limited liability company ("Mulungas II"), Mulungas I LLC, f/k/a Mulungas, LLC, a Missouri limited liability company ("Mulungas I"), Empirical Prime, LLC f/k/a Force Midwest, LLC, a Missouri limited liability company ("Empirical"), Apex Specialty Vehicles, LLC, a Missouri limited liability company ("Apex"), MAG Trucks, LLC, a Missouri limited liability company ("Mag"), and EP Manufacturing LLC f/k/a Mid Western Automotive, LLC, a Missouri limited liability company." [Ex. B, ¶ 4.]

[5] Not surprisingly, the Policy is not attached as an exhibit to the Petition. The Policy Number is not alleged. The Insuring Agreements in the unidentified Policy, the relevant definitions, and other material terms are not quoted or pled. However, this court may properly consider the TIC Policy. See Section III, *infra*.

2

The Receiver further alleges that on October 10, 2024, he sent two "Claim Letters" to TIC making claims <u>on behalf of</u> the Insured Entities under the Policy. [Pet., ¶ 13] The Receiver does not allege he was making any claims <u>against</u> the Insured Entities.

The Receiver contends that the two "Claim Letters" provide "extensive factual details and documentary evidence" for the "claim"[6] against Team Members Carlson, Brandow, and Thill under the following headings:

- Team Members Wrongful Acts Against Lenders of the Insured Entities
- Team Members Wrongful Acts Against Customers of the Insured Entities
- Team Members Use of Insured Entities' Assets for Criminal Use
- Team Members Misappropriates Assets of Apex and MAG Trucks to Capitalize Their New Companies

[Pet., pp. 3-6.] The legal theory set forth in the "Claim Letters" is expressed as:

- Team Members Breached Their Fiduciary Duties to the Insured Entities

Just as with the Policy, neither "Claim Letter" is attached to the Petition by the Receiver.

The Petition alleges that Mr. Carlson, Ms. Brandow, and Ms. Thill breached their fiduciary duties to the Insured Entities and personally enriched themselves with the assets of the Insured Entities, even when they were insolvent, resulting in claims by lenders and consumers. [Pet., ¶ 20.] Nonetheless, and importantly, the Petition does not allege that the Receiver has filed a lawsuit against the Team Members, made a written demand against them for monetary relief, or identify a settlement, damages, or judgment which an insured *is legally obligated to pay* so as to constitute "Loss" as that term is defined by the TIC Policy.

Count I for "Vexatious Refusal to Pay" alleges that TIC has, without reasonable cause, refused to pay to the Receiver the proceeds due under the Policy and that the refusal to pay the

---

[6] Not to be confused with the critical term "**Claim**" as defined by the TIC Policy. See, p. 5 below.

3

proceeds directly to the Receiver is vexatious and without reasonable cause or excuse, in violation of Mo. Stat. § 375.420. [Pet., ¶ 28.]

Count II for "Breach of Contract" then alleges that the Receiver "is the insured under the Policy," that "[TIC] had a contractual obligation to provide coverage for losses under the Policy," and that "[TIC] breached its obligations by failing to pay coverage for the losses at issue." [Pet., ¶¶ 30, 31 & 32.] Count II is silent as to the specific provisions of the Policy which TIC allegedly breached.

C.     **The Private Management Liability Insurance Policy**

The Private Management Liability Insurance Policy No. BFLPDOTMO010300_020487_02 was issued by Texas Insurance Company (the "TIC Policy") to Named Insured Empirical Prime LLC. The TIC Policy Period is February 5, 2023 to December 1, 2023. Pursuant to Endorsement No. 4, the "**RUNOFF / WIND DOWN ENDORSEMENT**," the Policy Period was extended from February 5, 2023, to November 3, 2024, solely with respect to Wrongful Acts before February 5, 2023. [Ex. A, p. 045.]

According to the **POLICY DECLARATIONS**, the TIC Policy provides a Combined Aggregate Limit of Liability of $2,000,000 for all Liability Coverage Parts, and a separate $1,000,000 Coverage Part Aggregate Limit for Directors and Officers Liability ("D&O Part"). [Ex. A, p. 002.] Because the Insured Entities are allegedly insolvent, the only potentially implicated Insuring Agreement is for Non-Indemnifiable Directors & Officers Liability, which has a Coverage Limit of $1,000,000.

The relevant Insuring Agreement under the "**PRIVATE MANAGEMENT LIABILITY INSURANCE DIRECTORS, OFFICERS & ORGANIZATION LIABILITY INSURANCE COVERAGE PART**" provides as follows:

        I.     **INSURING AGREEMENTS**
        A.     **Non-Indemnifiable Directors & Officers Liability**

4

We will pay **Non-Indemnifiable Loss**[7] on behalf of the **Team Members** resulting from a **Claim** first made against the **Team Members** during the Policy Period or any applicable Extended Reporting Period and reported to Us[8] pursuant to the terms of this Policy, for a **Wrongful Act** by the **Team Members**.

Section "**II. DEFINITIONS**" then includes, in part, the following terms:

A. "**Claim**" means any:
1. Written demand against the **Insured** for monetary damages or non-monetary or injunctive relief, including a written request to toll or waive a statute of limitations or engage in any alternative dispute resolution;
2. Notice of violation, notice of charges, indictment, arrest, or extradition warrant summons, civil or criminal complaint, demand for arbitration, request for injunction, order to show cause, or other similar pleading or charging document;

…

M. "**Insured**" means:
1. With respect to Insuring Agreement A and E, **Team Members**.
2. With respect to all other Insuring. Agreements B, C, D, and F, the **Insured Organization.**

N. "**Loss**" means the amount that an **Insured** is legally obligated to pay resulting from a **Claim**, including damages, settlements, judgments, pre- and post-judgment interest, **Defense Costs**, and Investigations Costs.

…

T. "**Team Member**" means any:
1. **Executive**; or
2. **Employee**.

---

[7] Section II. DEFINITIONS, defines "**Non-Indemnifiable Loss**" to mean "any **Loss** incurred by **Team Members** that the **Insured Organization** has not indemnified." Insuring Agreement A is the only relevant insuring agreement because the Insured Entities are insolvent and have and cannot indemnify the Team Members.

[8] The terms "Us" and "You" are defined in the first paragraph of the "**PRIVATE MANAGEMENT LIABILITY INSURANCE GENERAL TERMS AND CONDITIONS**." [Ex. A, p. 011.]

5

U. "**Wrongful Act**" means any actual or alleged act error, omission, misstatement, misleading statement, neglect or breach of duty by:

    1. A **Team Member** in their capacity as such or in an **Outside Capacity**;

    …; or

    4. Any matter **Claimed** against a **Team Member** solely by reason of their serving in such capacity, including service in an **Outside Capacity**.

Section "**II. DEFINITIONS**," paragraph L, of the "**PRIVATE MANAGEMENT LIABILITY INSURANCE GENERAL TERMS AND CONDITIONS**" defines "**Insured Organization**" as follows:

    L. "**Insured Organization**" means, collectively:
    1.   **Named Insured**; and
    2.   Any **Subsidiary**;

    Including any such organization as a **Debtor in Possession**.

## III.     <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must allege facts that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts "are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Torti v. Hoag,* 868 F.3d 666, 671 (8th Cir. 2017) (cleaned up).

At the motion to dismiss stage, a court can consider documents "necessarily embraced by the complaint," including "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quotation omitted) (holding the district

6

court properly considered business records attached to a motion to dismiss in which plaintiff consented to be contacted by cell phone on a claim alleging a violation of the Telephone Consumer Protection Act arising out of a contractual relationship); *Rossi v. Arch Ins. Co.*, 60 F.4th 1189, 1193 (8th Cir. 2023) (holding that the district court properly considered a policy, stay at home, and ski closure orders referenced in plaintiffs' complaint).

In general, materials embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quotation omitted). Stated more comprehensively:

> While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;" without converting the motion into one for summary judgment.

*Miller v. Redwood Toxicology Lab, Inc.,* 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Wright & Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

Therefore, in consideration of TIC's Motion to Dismiss, made pursuant to Fed. R. Civ. P. 12(b)(6), this Court may properly consider the TIC Policy, which was allegedly breached, and the Court may take judicial notice of the Stipulated Order from the state court which the Receiver purports gives him the authority to proceed with this action. *See id.*

## IV.     ARGUMENT

**A.     The TIC Policy Provides Third-Party Liability Coverage, Not First-Party Coverage**

The foundation for the Petition is that the TIC Policy provides first-party coverage that would allow the Receiver to bring a direct action. How the Receiver can possibly believe this begs belief, as the TIC Policy is plainly and unambiguously a third-party liability policy under Missouri law.

7

The distinction between "first-party" insurance and "third-party" insurance is defined by Missouri law as follows:

> First-party coverage insures against losses which the insured suffers directly. Third-party coverage, in contrast, insures the insured's liability for losses which third parties suffer on account of the insured's actions.

*Truman Medical Center, Inc. v. Progressive Casualty Ins. Co.*, 597 S.W.3d 362, 368 (Mo. Ct. App. 2020) ("*Truman*"; emphasis added).

The TIC Policy announces in headlines that it is a liability policy. The Declarations page of the TIC Policy is entitled, in part, "**PRIVATE MANAGEMENT LIABILITY INSURANCE**." [Ex. A, p. 002.] The General Terms and Conditions apply to "**PRIVATE MANAGEMENT LIABILITY INSURANCE**." [Ex. A, p. 011.] The relevant coverage part is entitled "**PRIVATE MANAGEMENT LIABILITY INSURANCE DIRECTORS, OFFICERS & ORGANIZATION LIABILITY INSURANCE COVERAGE PART**." [Ex. A, p. 024.]

The third-party nature of the TIC Policy cannot be more obvious. A prerequisite for coverage under Insuring Agreement A is a "**Claim** first <u>made against the</u> **Team Members** … <u>for a</u> **Wrongful Act** <u>by the</u> **Team Members**." [Ex. A, p. 024 (underline emphasis added).] "**Claim**" includes any "written demand <u>against</u> the **Insured** for monetary damages" or "civil complaint or demand for arbitration." [Ex. A, p. 025 (emphasis added).] Mere allegations of Wrongful Acts do not trigger coverage under Insuring Agreement A.

Any Loss payable under the TIC Policy must result from a Claim. The definition of "**Loss**" means "the amount that an **Insured** is legally obligated to pay <u>resulting from a</u> **Claim**…" [Ex. A, p. 027 (underline emphasis added).] TIC's obligation to pay Loss in the form of damages, settlements, or judgments cannot be determined until the Claim is adjudicated or settled.

With respect to settlement, General Terms and Conditions Section VIII.B provides, in pertinent part, as follows: "If You tender <u>the defense</u> of the **Claim** to Us, then We may make any investigation We deem necessary and shall have the right to settle any **Claim**; provided, however,

8

no settlement shall be made without Your consent, such consent not to be unreasonably withheld." [Ex. A, p. 017 (emphasis added).]

Finally, if the TIC Policy were a first-party policy, there would be no need for Section VIII. DEFENSE OF CLAIMS, Section XI. ALLOCATION, Section XXII. PRESUMPTIVE INDEMNIFICATION, and Section XXIII. PRIORITY OF NON-INDEMNIFIABLE LOSS PAYMENTS in the General Terms and Conditions. The specific exclusions listed in Section IV. EXCLUSIONS of the relevant Coverage Part also would be nonsensical in a first-party policy. [See, e.g., Ex. A, p. 030 and 031, Exclusion C (Intellectual Property) and E (ERISA), respectively.]

In summary, the TIC Policy does not provide first-party coverage for losses the Insured Entities suffer directly. Rather, as the Receiver admits at paragraphs 6 and 11 of the Petition, the TIC Policy provides third-party liability coverage for Loss resulting from Claims made against Team Members for their Wrongful Acts.

**B.**     **The Receiver Lacks Standing Under Missouri Law to Assert a Direct Action for Coverage Against TIC**

The Court can easily determine that this is an improper direct action. The caption of the Petition alone reveals that the Petition is a direct action against TIC, the only defendant named by the Receiver. Moreover, Count I for Vexatious Failure to Pay and Count II for Breach of Contract, in conjunction with the Prayer for Relief, establish that the Receiver is directly seeking payment of proceeds under the TIC Policy. Thus, the Petition is indisputably a direct action against TIC.

Missouri courts have long held that a third-party claimant such as the Receiver may not sue the insurer directly. In *State ex rel. Anderson v. Dinwiddie*, 224 S.W.2d 985 (Mo. banc 1949) ("*Dinwiddie*"), the Missouri Supreme Court held that an insurer may not be named as a co-defendant in a suit against its insured. Instead, "there must be a *final judgment* against the insured defendant for the loss or damage to person or property covered by the insurance before the insurance money can be recovered by a suit in equity as provided in the section [6010]." *Id.* at 984 (emphasis in original). The *Dinwiddie* Court further held that "recovery may also be had by garnishment of the insurer under the judgment against the insured." *Id.* at 984 (citations omitted).

9

*State Farm Mut. Auto. Ins. Co. v. Allen*, 744 S.W.2d 782 (Mo. banc 1988) ("*Allen*"), followed *Dinwiddie* in holding that:

> They [the third-party claimants] may not sue the insurer directly, but are relegated to garnishment process directed against the insurer when and if they obtain judgment against [the insured]. The theory of the garnishment action is that the insurer is in possession of a fund dedicated to the payment of judgments against the insured to the extent of the policy limits. See Section 379.195.1, RSMo 1986.

*Id.* at 785-786. A year later, the court in *Desmond v. American Ins. Co.*, 786 S.W.2d 144 (Mo. Ct. App. 1989) ("*Desmond*"), explained:

> The general rule is that an injured party cannot proceed in a direct action against an insurance company providing liability coverage for an insured who allegedly caused the harm sustained by the claimant…The injured party normally is required to bring an action against the alleged tortfeasor to establish liability. The requirement is based on the premise that the right of the injured party rests upon the liability of the insured.

*Id.* at 145 (citations omitted).

Subsequently, *Bryan v. Peppers*, 175 S.W.3d 714 (Mo. Ct. App. 2005) ("*Bryan*"), could not have been clearer in relying upon *Allen* in declaring "it is permissible for a plaintiff to sue his insurance company directly when bringing a first-party claim, but it is impermissible to sue a liability insurer directly when bringing a third-party claim." *Id.* at 722.

In 2020, the Missouri Western District Court of Appeals reiterated in *Truman* the distinction between first-party and third-party insurance:

> The distinction between first-party and third-party insurance coverage has multiple substantive implications (including … the existence of a common-law cause of action for an insurer's bad-faith failure to pay; … and the right of an insured or injured party to bring a direct action against the insurer).

597 S.W.3d at 368-369 (citing *Bryan* as holding "it is impermissible to sue a liability insurer directly when bringing a third-party claim").

Most recently, in *Scobee v. USAA Casualty Ins. Co.*, 2024 WL 3272925, *5 (E.D. Mo. 2024), the court held "Missouri does not permit a third-party, like the Scobees, to bring a bad-faith-failure-to-settle claim against an insurer in the absence of an assignment from the insured."

Well-settled Missouri law does not permit the Receiver to maintain this direct action against TIC, and the Receiver's Petition must therefore be dismissed.[9]

**C.      Counts I and II Fail Because the TIC Owes No Contractual Obligation to the Receiver**

Because the Receiver cannot bring a direct action against TIC, Counts I and II fail as a matter of law. Moreover, Counts I and II are not viable because the Receiver is not an Insured[10] and therefore is not in privity with TIC. TIC owes no contractual obligation to pay the Receiver the proceeds of the TIC Policy. Therefore, any purported refusal to pay the Receiver cannot be deemed unreasonable or vexatious.[11] When an insured's breach of contract claim fails, a vexatious refusal claim for payment under the policy must also fail. *Goodman v. Allstate Fire & Cas. Ins. Co.*, No. 22-00383-CV-W-GAF, 2023 WL 6536145, at *4 (W.D. Mo. Aug. 14, 2023) (citing *BSI Constructors, Inc. v. Hartford Fire Ins. Co.*, 705 F.3d 330, 335 (8th Cir. 2013)).

In fact, TIC would be in breach of its contractual obligations to the Team Members if it settled a non-existent claim, as it would exhaust the policy limits available for actual third party claims. The breach would be more egregious if TIC settled a non-existent claim without the Team Members' requisite consent. [General Terms and Conditions Section VIII.B, Ex. A, p. 017.]

---

[9] The Receiver could theoretically maintain a direct action under a Business Crime Policy, which would provide first-party coverage for the direct loss of the Insured Entities resulting from employee theft, evidenced by submitting a Proof of Loss within a specified time after discovery of loss. The Receiver's first-party remedy perhaps lies elsewhere.

[10] The term "**Insured**" includes "**Team members**" and the "**Insured Organization**." [Ex. A, p. 027.] The Receiver does not fall within either of those terms.

[11] An element of a count for vexatious refusal to pay is that the insurer's "refusal was without reasonable cause or excuse." *Dhyne v. State Farm Fire and Cas. Co.*, 188 S.W.3d 454, 457 (Mo. banc 2006).

**D.** **In Bringing This Improper Direct Action, the Receiver is Attempting to Usurp the Policy Proceeds and Deprive the Team Members of the Benefits of the Priority of Payments Provision Without Their Knowledge**

In bringing an improper direct action instead of making a Claim against the Team Members, the Receiver also circumvents the TIC Policy's Priority of Non-Indemnifiable Loss Payments provision [Ex. A, p. 022, Section XXIII], which protects the interests of the Team Members in circumstances such as this:

> We will pay **Loss** and other covered amounts as they become due and payable under this Policy without consideration of other future payment obligations. However, if **Loss** exceeds the remaining applicable Limit of Liability or in the event of the **Financial Impairment** of the **Insured Organization**, we will pay **Loss** in the following order:
>
> first, pay **Non-Indemnifiable Loss**, then only after this payment;
>
> with respect to whatever remaining amount of the applicable Coverage part Limit of Liability is available, pay such other **Loss** for which coverage is provided under the remaining coverage provided under this Policy.

The scope of a priority of payments provisions was adjudicated in a Chapter 11 bankruptcy before the Petition was filed. *In re SVB Financial Group*, 650 B.R. 790, 2023 WL 3578447 (Bankr. S.D.N.Y. May 22, 2023) ("*SVB*"). In that case, the issue was litigated by the Creditors' Committee and the directors and officers. The directors and officers were contending they were entitled to the policy proceeds for their defense based on the terms of the operative priority of payment provision. The Creditors' Committee argued the policy proceeds should instead be used for indemnification of the insured entity under Side C coverage.

In ruling for the directors and officers, the Court held that "[c]ourts have <u>routinely found</u> where such priority of payments provisions are present, the insureds are entitled to access the proceeds, notwithstanding the fact that the debtor also has an interest in the proceeds of the policy." *Id.* at 800 (underline emphasis added). The court further explained:

> Thus, even if it is true that the Directors' and Officers' will deplete the policy, they are entitled to use the proceeds first. The Directors'

and Officers' use of the funds will not interfere with the bankruptcy estate, as even if the Debtor eventually seeks coverage under the ABC Policies, the Debtor is last in line for the insurance proceeds.

*Id.* at 800.

The recent *SVB* decision is squarely on-point. By bringing a direct action against TIC, the Receiver is attempting to usurp the TIC policy proceeds and deprive the Team Members of their entitlement to use the TIC Policy proceeds first, all without their knowledge or consent.

**E.** **Because Amendment of the Petition Would Be Futile, the Motion to Dismiss Should Be Granted With Prejudice**

For the reasons set forth above, any legally cognizable direct action by the Receiver is not ripe and is improper under Missouri law. First, the cases discussed in Section IV.B above recognize that a third-party claimant may sue the insurer directly only if a judgment has been obtained against the insured or if the third-party has obtained an assignment. *See,* Section IV.B. To trigger potential coverage under Insuring Agreement A, there first must be a claim against the Team Members. The Receiver does not allege, and can never allege, that he has taken this first step.

In Paragraph 14, the Petition alleges a litany of Wrongful Acts by the Team Members. At paragraph 20, the Petition then alleges they breached their fiduciary duties to the Insured Entities. [Pet. ¶ 20.] As discussed above, the Petition does not allege the Receiver has made a Claim against the Team Members. Thus, the Receiver has tried to create the illusion that TIC's payment obligations under the TIC Policy are triggered by Wrongful Acts, when Insuring Agreement A plainly requires "**Non-Indemnifiable Loss**" resulting from a "**Claim**" against the "**Team Members**" for a "**Wrongful Act**."

Second, a condition precedent to coverage under Insuring Agreement A is notice by the Team Members to TIC pursuant to Section XI. CLAIM AND POTENTIAL CLAIM NOTICES, paragraph A, of the PRIVATE MANAGEMENT LIABILITY INSURANCE GENERAL TERMS AND CONDITIONS:

> **A.** As a condition precedent to coverage, the **Insured** shall give Us written notice of any **Claim** made against the **Insured** as soon as practicable after the Chief Executive Officer or

13

> functionally equivalent first learns of such **Claim**, but in no event later than (i) ninety (90) days after the expiration of the Policy period or (ii) the expiration of the Automatic Extended Reporting Period, if exercised.

Given the absence of a Claim against the Team Members, the condition precedent for coverage cannot possibly be satisfied.[12]

Third, the payment obligation under Insuring Agreement A requires Non-Indemnifiable "**Loss**." Loss is defined, in part, as "the amount that an **Insured** is legally obligated to pay resulting from a **Claim**…." In the absence of a Claim, the Team Members are not legally obligated to pay anything.

Finally, the Receiver can never overcome the TIC Policy's Priority of Non-Indemnifiable Loss Payments provision, (Ex. A., p.022, Section XXIII), which entitles the Team Members to use the policy proceeds first.

For each and all of these reasons, any theoretical direct action by the Receiver against TIC is premature and not ripe. As the court stated in *Allen*, supra, third-party claimants may not sue the insurer directly but are relegated to the garnishment process directed against the insurer "when and if they obtain judgment against the insured." The Receiver has never even initiated the "when and if" process here. Therefore, there is no basis for leave to amend, and the Petition should be dismissed with prejudice for failure to state a claim pursuant to  Fed. R. Civ. P. Fed. R. Civ. P. 12(b)(6).

### V.      CONCLUSION

In a brazen move designed to gain leverage, circumvent Missouri law, and deprive the Team Members of their rights under the TIC Policy, the Receiver has filed a direct action against

---

[12] The Petition alleges the Receiver provided notice of the Claim Letters to TIC. [Pet., ¶ 13.] The function of the Claim Letters was to put TIC on notice of Wrongful Acts committed by the Team Members as a precursor to this direct action. The Petition does not allege the Claim Letters made a Claim against the Team Members. The Petition does not allege that the Claim Letters provided TIC with notice of a Claim against the Team Members. Furthermore, the Claim Letters would not constitute valid notice to TIC even if the Receiver had made a Claim against the Team Members. The sentence structure makes it clear that the "Insured" providing notice to TIC must be the "Insured" against whom the Claim is made. See, General Terms and Conditions Section IX.A, stating, in pertinent part, that: "As a condition precedent to coverage, the **Insured** shall give Us written notice of any **Claim** made against the **Insured** …." [Ex. A, p. 017 (emphasis added).]

14

TIC <u>before</u> making a Claim against the Team Members, and <u>without</u> giving them notice and an opportunity to protect their interests. The Receiver lacks standing to bring this direct action, and any legally cognizable direct action is theoretical, premature, and not ripe. Accordingly, TIC respectfully requests that the Motion to Dismiss be granted with prejudice.

Respectfully Submitted,

SANDERS WARREN & RUSSELL LLP

*/s/ Michael C. Kirkham*

| Michael C. Kirkham | MO #42593 |
| Steve R. Savio | MO #73925 |

11225 College Boulevard, Suite 450
Overland Park, KS  66210
Tel: (913) 234-6100
Fax: (913) 234-6199
m.kirkham@swrllp.com
s.savio@swrllp.com
***ATTORNEYS FOR DEFENDANT TEXAS INSURANCE COMPANY***

15

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 24th day of March, 2025, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

Christopher S. Dove
Brennan P. Fagan
FAGAN & EMERT, LLC
800 New Hampshire Street, Suite 110
Lawrence, KS 66044
Tel: (785) 331-0330
Fax: (785) 331-0303
cdove@faganemert.com
bfagan@fanganemert.com
***Attorneys for Plaintiff***

*/s/ Michael C. Kirkham*
***Attorney for Defendant Texas***
***Insurance Company***

16