

**Texas Insurance Company**
P.O. BOX 3646 OMAHA, NE 68103-0646

To the best of my knowledge and belief, I certify that the attached is a true and exact copy of:

**Policy Number:** BFLPDOTMO010300_020487_02

**Insured:** Empirical Prime LLC

**Policy Dates:** February 5, 2023 – December 1, 2023

_____      3/20/25
Texas Insurance Company Representative    Date

Sworn to and subscribed before me at Omaha, Douglas County, NE, this 20th day of March, 2025.

_____
Signature of Notary Public

Virginia L Harriger                3/23/2026
Printed Name of Notary Public         Commission Expires

> General Notary - State of Nebraska
> **VIRGINIA L. HARRIGER**
> My Comm. Exp. March 23, 2026.

 

# APPLIED FINANCIAL LINES
# PRIVATE MANAGEMENT LIABILITY INSURANCE
# POLICY DECLARATIONS

RENEWAL OF NUMBER: BFLPDOTMO010200_020487_01
POLICY NUMBER: BFLPDOTMO010300_020487_02
AGENCY CODE:

1. Named Insured:

Empirical Prime LLC
3320 S Outer Belt Rd
Grain Valley, MO 64029

2. Policy Period:

FROM:    February 5, 2023
TO:    December 1, 2023
at 12:01 a.m. local time of the Named Insured at the above address

3. Policy Period Premium: ███████

4. Liability Coverage Parts:

**Combined Aggregate Limit of Liability**      $ 2,000,000
for all Liability Coverage Parts

**Directors and Officers Liability**      $ 1,000,000
Coverage Part Aggregate Limit

| Insuring Agreements | Coverage Limit | Retention | Prior/Pending Date(s) |
|---|---|---|---|
| Non-Indemnifiable Directors & Officers Liability | $1,000,000 | $0 | 05/05/2022 |
| Indemnifiable Directors & Officers | $1,000,000 | $25,000 | 05/05/2022 |
| Entity Liability | $1,000,000 | $25,000 | 05/05/2022 |
| Employed Lawyers | $1,000,000 | $25,000 | 05/05/2022 |

| Sublimit of Liability | Coverage Limit | Retention |
|---|---|---|
| Derivative Costs | $500,000 | $25,000 |
| Crisis Costs | $25,000 | $25,000 |
| Additional Non-Indemnifiable Limit for Directors and Officers Liability | $1,000,000 | $0 |

**Employment Practices Liability**      $ 1,000,000
Coverage Part Aggregate Limit

| Insuring Agreements | Coverage Limit | Retention | Prior/Pending Date(s) |
|---|---|---|---|
| Employment Practices Liability | $1,000,000 | $25,000 | 05/05/2022 |
| Third Party Employment Practices Liability | $1,000,000 | $25,000 | 05/05/2022 |

| Sublimit of Liability | Coverage Limit | Retention |
|---|---|---|
| Defense for Wage and Hour Actions | $100,000 | $25,000 |

FL-00002A-TIC
(01-2022)

EX. A - 002

**Fiduciary Liability**                                    **N/A**
Coverage Part Aggregate Limit

| Insuring Agreements | Coverage Limit | Retention | Prior/Pending Date(s) |
|---|---|---|---|
| Fiduciary Liability | N/A | N/A | N/A |

| Sublimit of Liability | Coverage Limit | Retention |
|---|---|---|
| Voluntary Compliance Program Costs | N/A | N/A |
| Penalties for Violations of HIPAA Privacy Provisions | N/A | N/A |
| Penalties under Pension Protection Act of 2006 | N/A | N/A |
| Penalty under IRC Section 4975 | N/A | N/A |
| Penalties under Section 502(c) of ERISA | N/A | N/A |

5. Non-Liability Coverage Part Elections:

**Commercial Crime**                                    **N/A**
Coverage Part Aggregate Limit

| Insuring Agreements | Coverage Limit | Retention |
|---|---|---|
| Employee Theft of Insured Property | N/A | N/A |
| Employee Theft of Client Property | N/A | N/A |
| Computer and Funds Transfer Fraud | N/A | N/A |
| Inside the Premises | N/A | N/A |
| Outside the Premises | N/A | N/A |
| Forgery or Alteration | N/A | N/A |
| Money Order and Currency Fraud | N/A | N/A |
| Investigation Cost | N/A | N/A |
| Computer Systems Restoration Expenses | N/A | N/A |
| Identity Recovery Expenses Reimbursement | N/A | N/A |
| Deception Fraud | N/A | N/A |

6. Extended Reporting Period:     1 Year at **100%** Additional Premium
                                  3 Year at **150%** Additional Premium
                                  6 Year at **200%** Additional Premium

7. Run-Off Coverage Period:       1 Year at **100%** Additional Premium
                                  3 Year at **150%** Additional Premium
                                  6 Year at **200%** Additional Premium

8. Insurer:                       Texas Insurance Company, a Non-Admitted Surplus Lines Insurer,
                                  A-Rated by AM Best

THESE DECLARATIONS, FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY. FORMS AND ENDORSEMENT(S) ARE MADE A PART OF THIS POLICY AT THE TIME OF ISSUE.

Signed: _____
                JEFFREY SILVER, Secretary

FL-00002A-TIC
(01-2022)

| Insured Name | Policy Number | Policy Effective Date |
|---|---|---|
| Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 |

# POLICYHOLDER NOTICE

## Surplus Lines Disclosure

**This is evidence of insurance procured and developed under the Missouri Surplus Lines Laws. It is NOT covered by the Missouri Insurance Guaranty Association. This insurer is not licensed by the state of Missouri and is not subject to its supervision.**

AUW-00050A-NAC
(12-2021)

Case 4:25-cv-00150-BP    Document 8-1    Filed 03/24/25    Page 4 of 46    EXA - 004

| Insured Name | Policy Number | Policy Effective Date |
|---|---|---|
| Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 |

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Endorsement # | Reference No. | Title |
|---|---|---|
| | FL-00002A-TIC | Declarations Page |
| | AUW-00050A-NAC | Surplus Lines Disclosure |
| | AUW-00300A-NAC | Schedule of Forms and Endorsements |
| | FL-01100A-NAC | Claims Reporting Procedure |
| | AUW-01100A-TIC | Texas Insurance Company Privacy Policy Statement |
| | AUW-00400A-NAC | US Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |
| | FL-01200A-NAC | Service of Suit Clause |
| | AUW-00600A-NAC | Notice of Terrorism Insurance Coverage – Coverage Included |
| | FL-10100A-NAC | General Terms and Conditions |
| | FL-10200A-NAC | Directors, Officers & Organization Liability Insurance Coverage Part |
| | FL-10300A-NAC | Employment Practices Liability Insurance Coverage Part |
| 1 | FL-99999A-NAC | Separate Retention For Specific Circumstances Endorsement |
| 2 | FL-99999A-NAC | Additional Limit For Defense Endorsement |

AUW-00300A-NAC
(12-2021)

EX. A - 005

| Insured Name | Policy Number | Policy Effective Date |
|---|---|---|
| Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 |

## POLICYHOLDER NOTICE
## Claims Reporting Procedure

An important value of your insurance coverage is the ability of the insurance company to respond when you have a claim. Applied Financial Lines is committed to providing its insureds with effective claim services.

Notices of each incident, claim or suit must be sent immediately to:

> Applied Risk Services, Inc.
> 10825 Old Mill Rd.
> Omaha, NE 68154
>
> Email:          newclaim@auw.com

You will be contacted by a representative of the company's Claim Department. This representative will confirm receipt of the loss notice directly to you, provide a company claim number for all future correspondence, refer the claim to an adjuster if necessary, and discuss any further aspects of the claim.

**ENQUIRIES OR DISPUTES:**

Should you wish to make a complaint or dispute concerning the premium or about a claim regarding the coverage under this Policy, you may do so either in writing or verbally to:

Applied Risk Services, Inc
ATTN: General Counsel
10805 Old Mill Road
Omaha, Nebraska 68154

Case 4:25-cv-00150-BP    Document 8-1    Filed 03/24/25    Page 6 of 46    EX. A - 006

| Insured Name | Policy Number | Policy Effective Date |
|---|---|---|
| Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 |

# POLICYHOLDER NOTICE

## Texas Insurance Company Privacy Policy Statement

Insurance companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share and protect your personal information. Please read this Privacy Policy Statement carefully.

Texas Insurance Company wants you to know how we protect the confidentiality of your non-public personal information. We want you to know how and why we use and disclose the information that we have about you. The following describes our policies and practices for securing the privacy of our current and former customers.

**INFORMATION WE COLLECT**

The non-public personal information that we collect about you includes, but is not limited to:

1. Information contained in applications or other forms that you submit to us, such as name, address, and social security number

2. Information about your transactions with our affiliates or other third-parties, such as balances and payment history

3. Information we receive from a consumer-reporting agency, such as credit-worthiness or credit history

**INFORMATION WE DISCLOSE**

All insurance companies need to share customers' personal information to run their business. We share the information that we have when it is necessary to provide our products and services. We may also share information when the law requires or permits us to do so.

**CONFIDENTIALITY AND SECURITY**

Only our employees and others who need the information to service your account have access to your personal information. To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. Those measures include computer safeguards and secured files and buildings. To protect you against "phishing" and other fraudulent activities, we will never request that you provide personal information to us via unsolicited e-mails, text messages or pop-up windows. We do not sell personal information.

**<u>RIGHT TO ACCESS OR CORRECT YOUR PERSONAL INFORMATION</u>**

**Federal law gives you the right to limit certain sharing. State laws may give you additional rights to limit sharing. You have a right to request access to or correction of your personal information that is in our possession.**

**CONTACTING US**
If you have any questions about this privacy notice or would like to learn more about how we protect your privacy, please write to us at the following address:

Texas Insurance Company
10805 Old Mill Road
Omaha, Nebraska 68154
ATTN: General Counsel

AUW-01100A-TIC
(12-2021)

EX. A - 007

| Insured Name | Policy Number | Policy Effective Date |
|---|---|---|
| Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 |

## POLICYHOLDER NOTICE
## US Treasury Department's Office of Foreign Assets Control ("OFAC")
## Advisory Notice to Policyholders

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. Please read this Notice carefully.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist Organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's website – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

AUW-00400A-NAC
(12-2021)

EX. A - 008

| Insured Name | Policy Number | Policy Effective Date |
|---|---|---|
| Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 |

## POLICYHOLDER NOTICE
### Service of Suit Clause

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the  United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon

Texas Insurance Company
Attn: General Counsel
10805 Old Mill Road
Omaha, NE 68154

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

FL-01200A-NAC
(12-2021)

EX. A - 009

| Insured Name | Policy Number | Policy Effective Date |
|---|---|---|
| Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 |

**POLICYHOLDER NOTICE**

**Notice of Terrorism Insurance Coverage – Coverage Included**

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act of 2002, as amended in 2015, and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2019, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury-in consultation with the Secretary of Homeland Security, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended and extended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses the following of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage:

For the period beginning on January 1, 2021, and ending on December 31, 2027, an amount equal to 80% of our direct earned premiums during the immediately preceding calendar year.

The Terrorism Risk Insurance Act, as amended and extended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is $0 and does not include any charges for the portion of losses covered by the United States government under the Act.

AUW-00600A-NAC
(12-2021)

| Insured Name | Policy Number | Policy Effective Date |
|---|---|---|
| Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 |

## PRIVATE MANAGEMENT LIABILITY INSURANCE
## GENERAL TERMS AND CONDITIONS

Throughout this Policy, the words "you" and "your" refer to the **Named Insured** shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance. Other words and phrases that appear in bold print have special meaning. Refer to the Definitions sections in this Policy.

This Policy, including the Declarations, General Terms and Conditions, elected **Coverage part(s)**, written endorsements, and the **Application** shall constitute the entire agreement between us and you regarding the insurance provided hereunder.

In consideration of the payment of the premium and subject to all of the terms and conditions of this Policy (including all endorsements attached hereto), we and you agree as follows:

### I. TERMS AND CONDITIONS

Except for these General Terms and Conditions or unless stated to the contrary in any **Coverage part** of this Policy, the terms, conditions and limitations of each **Coverage part** shall apply only to that **Coverage part**. If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms, conditions and limitations of any **Coverage part**, the terms, conditions and limitations of such **Coverage part** shall control for purposes of that **Coverage part**. Any defined term referenced in these General Terms and Conditions and also defined in a **Coverage part**, shall, for purposes of coverage under that **Coverage part**, have the meaning ascribed to it in that **Coverage part**.

### II. DEFINITIONS

A. "**Application**" means all written materials and information, including signed applications and any information attached thereto, incorporated therein, submitted, or made available by or on behalf of you to us in connection with underwriting of this Policy. The **Application** is deemed attached to and incorporated into this Policy.

B. "**Claim**" shall have the meaning ascribed to it in the applicable **Coverage part**.

C. "**Coverage part**" means each Coverage part designated in the Declarations as a part of this Policy.

D. "**Defense costs**" shall have the meaning ascribed to it in the applicable **Coverage part**.

E. "**Debtor in possession**" shall have the meaning ascribed to it in Chapter 11 of the United States Bankruptcy Code or any similar law.

F. "**Domestic partner**" means any natural person qualifying as a domestic partner or party to a civil union under the provisions of any applicable federal, state or local law or under the provisions of any formal program you establish.

G. "**Employee**" means any natural person whose labor or service was, is or shall be engaged and directed by the **Insured Organization**, including fulltime, part-time, seasonal, leased and temporary employees.
**Employee** also means any:

FL-10100A-NAC
(12-2021)

Case 4:25-cv-00150-BP    Document 8-1    Filed 03/24/25    Page 11 of 46    EX. A - 011

1. Volunteers or interns of the **Insured Organization** in their capacity as such; and

2. Individual who is an **Independent contractor** while performing services on your behalf or at your direction.

However, this definition of **Employee** shall hereby expressly not apply for purposes of the **Non-liability coverage part**.

H. "**ERISA**" means the Employee Retirement Income Security Act of 1974 (as amended) and any rules or regulations promulgated thereunder or any similar law.

I. "**Executive**" means any natural person who was, is or shall be a duly elected or appointed:

1. Director, officer, or member of the board of the managers or management committee of the **Insured Organization**;

2. In-house general counsel of the **Insured Organization**;

3. Any duly elected or appointed advisory, supervisory, or scientific advisory board member;

4. Stockholders' representative;

5. General Partner; and

6. Any foreign or functional equivalent of any of the foregoing.

J. "**Independent contractor**" means any natural person working for the **Insured Organization** in the capacity of an independent contractor while performing services on behalf of you or at your direction.

K. "**Insured**" shall have the meaning ascribed to it in the applicable **Coverage part**.

L. "**Insured Organization**" means, collectively:

1. **Named Insured**; and

2. Any **Subsidiary**;

including any such organization as a **Debtor in possession**.

M. "**Interrelated Wrongful acts**" means **Wrongful acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes. All **Interrelated Wrongful acts** are deemed to be a single **Wrongful act.**

N. "**Liability Coverage parts**" shall mean the Directors and Officers Liability, Employment Practices Liability, and Fiduciary Liability **Coverage parts**, if included in the Liability Coverage Parts section of the Declarations.

O. "**Loss**" shall have the meaning ascribed to it in the applicable **Coverage part**.

P. "**Non-liability Coverage Part**" shall mean the Commercial Crime **Coverage part**, if included in

FL-10100A-NAC
(12-2021)

the Non-Liability Coverage Part Elections section of the Declarations.

Q. "**Plan**" means:

1. Any Employee Benefit Plan, Pension Benefit Plan or Welfare Benefit Plan, as each is defined in the Employee Retirement Income Security Act of 1974, as amended, or any similar law, which was, is now, or hereafter becomes sponsored solely by the **Insured**, or sponsored jointly by the **Insured** and a labor organization, solely for the benefit of the **Insured's Employees**;

2. Any other employee benefit plan or program not subject to **ERISA** sponsored solely by the **Insured** for the benefit of the **Insured's Employees**, including any fringe benefit, or excess benefit plan;

3. Any employee benefit plan or program otherwise described in Paragraphs 1. or 2. above while such plan or program is being actively developed, formed or proposed by the **Insured** prior to the formal creation of such plan or program;

4. Any government-mandated insurance program for workers' compensation, unemployment, social security or disability benefits for the **Insured's Employees**;

5. Any Voluntary Employee's Beneficiary Association as defined in Section 501(c)(9) of the Internal Revenue Code of 1986, as amended, for which the purpose is to provide life, sickness, accident or other benefits for voluntary members who are **Employees** (including their dependents or designated beneficiaries).

**Plan** shall not include any "multiemployer plan" or "employee stock ownership plan" as defined by **ERISA**, unless such plan is specifically included as a **Plan** by endorsement to this Policy.

R. "**Policy period**" means the period specified in the Declarations, subject to any cancellation prior to the scheduled expiration date.

S. "**Regulatory body**" means any federal, state, local, or foreign law regulatory body or other investigative, administrative, enforcement, or governmental authority, or the enforcement unit of any securities or commodities exchange or similar self-regulatory organization.

T. "**Related claim**" means all **Claims** arising out of a single **Wrongful act**.

U. "**Subsidiary**" means any entity of which you:

1. Own more than fifty percent (50%) of the issued and outstanding voting equity securities of such entity; or

2. Control voting rights representing the present right to elect or appoint more than fifty percent (50%) of the directors or trustees of such entity.

V. "**Team member**" shall have the meaning ascribed to it in the applicable **Coverage part**.

W. "**Venture capital sponsor**" means any organization listed in the **Application** as equity investors in the **Insured Organization**.

X. "**Wrongful act**" shall have the meaning ascribed to it in the applicable **Coverage part**.

FL-10100A-NAC
(12-2021)

| Insured Name | Policy Number | Policy Effective Date |
|---|---|---|
| Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 |

### III. LIMITS OF LIABILITY

A. Combined Aggregate Limit of Liability

The Combined Aggregate Limit of Liability stated in the Declarations is the most We will pay under this Policy for all applicable **Liability Coverage parts**

B. Coverage part Aggregate Limit of Liability

Subject to the Combined Aggregate Limit of Liability, any **Coverage part** Aggregate Limit of Liability stated in the Declarations is the most We will pay under each respective **Coverage part**.

C. Coverage Limits of Liability

Subject to the Combined Aggregate Limit of Liability and any **Coverage part** Aggregate Limit of Liability, each Coverage Limit stated in the Declarations is the most We will pay under each respective Insuring Agreement.

1. Any **Loss** paid under one **Coverage part** shall reduce the Combined Aggregate Limit of Liability for all other **Coverage parts**.

2. If multiple **Coverage parts** apply to the same **Claim**, the limit of liability that applies to such **Claim** will not exceed the highest limit of liability available under any one **Coverage part** that applies.

3. **Defense costs** are part of, and not in addition to, the Combined Aggregate Limits of Liability, and Our payment of **Defense costs** reduces and may totally exhaust such limits of liability.

D. Sublimits of Liability

Each sublimit of liability, if any, stated in the Declarations is the most We will pay for all **Loss** or other covered amounts that are subject to such sublimit. Any sublimit of liability set forth in any **Coverage part** shall be part of, and not in addition to, the respective **Coverage part** Limit of Liability.

E. Defense costs

**Defense costs** are part of, and not in addition to, the limits of liability applicable to each **Coverage part**, and the payment by Us of **Defense costs** reduces such limits of liability.

F. Limit of Liability Exhaustion and Payment

If the applicable limit of liability under this Policy is exhausted by payment of **Loss**, Our obligations, including without limitation any duty to defend, shall be completely fulfilled and extinguished. Except with respect to these General Terms and Conditions ("Priority of Non Indemnifiable **Loss** Payments"), We are entitled to pay **Loss** as it becomes due and payable by You, without consideration of other future payment obligations.

### IV. COVERAGE TERRITORY

FL-10100A-NAC
(12-2021)

This Policy shall apply on a worldwide basis.

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated, or another element of **Loss** under this Policy is stated in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in The Wall Street Journal on the date the final judgment is reached, the amount of the settlement is agreed upon, or the other element of **Loss** is due, respectively.

Any **Loss** that You incur in any jurisdiction other than the United States or any of its territories or possessions shall be deemed, at Your written direction, a **Loss** payable to You at the address shown on the Declarations. Any such payment by Us to You pursuant to this paragraph shall fully discharge Our liability under this Policy for such **Loss**. Any **Loss** incurred by a **Team member** in a jurisdiction other than the United States or any of its territories or possessions and which is not indemnified or paid by You shall, to the extent permissible under applicable law, be paid to such **Team member** in a jurisdiction mutually acceptable to such **Team member** and Us.

However, this Policy does not apply in any country, province or territory where it would be in violation of the laws of the United States including, but not limited to U.S. economic or trade sanction laws or export control laws administered by the U.S. Treasury, State, and Commerce Departments (e.g. the economic and trade sanctions administered by the U.S. Treasury Office of Foreign Assets Control).

## V. RETENTIONS

A.  Our liability under each **Coverage part** with respect to **Loss** on account of each **Claim** shall apply only to that part of **Loss** which is excess of the applicable Retention set forth in the Declarations.

The Retention shall be borne uninsured by the **Insured Organization**. The Limits of Liability will not be reduced by payment of any Retention.

B.  If a single **Claim** is covered in whole or in part under more than one **Coverage part**, the applicable Retention under each such **Coverage part** shall be applied with respect to coverage for such **Claim** under such **Coverage part**, provided the sum of all applicable Retentions under all such **Coverage parts** shall not exceed the largest of such applicable Retentions.

C.  No Retention applies to **Loss** that the **Team members** are legally obligated to pay if such **Loss** is not indemnified by the **Insured Organization**.

If the **Insured Organization** refuses or fails within sixty (60) days after a **Team member's** request to indemnify or advance covered **Loss** or if the **Insured** is unable to indemnify or advance covered **Loss** due to **Financial Impairment**, We shall pay such covered **Loss** without applying the applicable Retention.

## VI. CLAIMS

A.  Single Claims

All **Claims** under the **Coverage parts** which arise out of the same **Wrongful act** or **Interrelated Wrongful acts** shall be deemed one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made against any **Insured**, regardless of whether such date is before or during the **Policy period**. In no event shall a single lawsuit or proceeding

FL-10100A-NAC
(12-2021)

constitute more than one **Claim**.

**B.      Related claims**

If a **Related claim or claims** are subsequently made against You and are reported to Us in the manner set forth in Section IX., **CLAIM AND POTENTIAL CLAIM NOTICES**, subpart (a), all such **Related Claims**, whenever made, will be considered a single **Claim** and such **Claim** will be deemed to have been made on the date the first of those **Claims** was made against the **Insured**.

## VII. EXTENDED REPORTING PERIOD

A.      Extended Reporting Period

1.      If any **Coverage part** is cancelled by you or is not renewed by us or you, then solely with respect to such **Coverage part** that was cancelled or not renewed, You will have the right to purchase an Optional Extended Reporting Period to immediately follow the effective date of cancellation or nonrenewal.

2.      The Optional Extended Reporting Periods and their respective additional premiums are stated in the Declarations. We must receive written notice of the Optional Extended Reporting Period elected, together with payment of the applicable additional premium, within 60 days after the effective date of cancellation or nonrenewal. If We do not receive payment within such period, We will not be required to provide any Optional Extended Reporting Period.

3.      If purchased, the additional premium for the Optional Extended Reporting Period shall be fully earned at the inception of the Extended Reporting Period. The Extended Reporting Period is not cancelable.

4.      There is no separate limit of liability for the Extended Reporting Period. No Extended Reporting Period reinstates or increases the Limits of Liability.

5.      A **Claim** reported in writing to Us during any applicable Extended Reporting Period will be deemed to have been made on the last day of this **Policy period**.

## VIII. DEFENSE OF CLAIMS

A.      Duty to Defend

1.      We do not assume any duty to defend. It is Your duty to defend any **Claim**.

2.      You have the right to tender the defense of the **Claim** to Us, which shall be exercised in writing by you on behalf of all **Insured**s to Us at the time notice of a **Claim** is first provided pursuant to Section IX., **CLAIM AND POTENTIAL CLAIM NOTICES**, of this Policy. This right shall terminate if not exercised within forty-five (45) days of the date the **Claim** is first made against the **Insured**.

3.      Further, from the date the **Claim** is first made against You to the date when We accept

FL-10100A-NAC
(12-2021)

the tender of the defense of such **Claim**, You shall take no action, or fail to take any required action, that prejudices any of the **Insured's** or Our rights with respect to such **Claim**. Our assumption of the defense of the **Claim** shall be effective upon our written confirmation to You. Once the defense has been tendered to Us, You shall have the right to effectively associate with Us in the defense and negotiation of any settlement of a **Claim**; provided however, We shall not be obligated to defend such **Claim** after the Combined Aggregate Limit of Liability or any applicable **Coverage part** Limit of Liability has been exhausted.

4. If You do not tender the defense to Us in the manner set forth in 2. above, then it shall be Your duty and not Our duty to defend the **Claim** covered under such **Coverage part**.

5. When We have not assumed the defense of a **Claim**, We shall have the right and be given the opportunity, at Our sole expense, to associate Ourselves in the defense and settlement of any **Claim** that appears reasonably likely to involve this Policy. You shall give Us full cooperation and such information as We may reasonably require.

B. Settlement

The **Insured** agrees to neither admit nor assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur **Defense costs** without Our prior written consent, which shall not be unreasonably withheld. We shall not be liable for or as a result of any offer to settle, settlement, **Defense costs**, assumed obligation, admission or stipulated judgment to which We have not given Our prior written consent.

However, if You are able to settle any **Claim** which, inclusive of **Defense Costs,** does not exceed the Retention or remaining Retention, Our consent is not required for the settlement of such **Claim(s)**.

If You tender the defense of the **Claim** to Us, then We may make any investigation We deem necessary and shall have the right to settle any **Claim**; provided, however, no settlement shall be made without Your consent, such consent not to be unreasonably withheld.

C. Advancement of Defense costs

We shall, on a quarterly basis, advance on your behalf covered **Defense costs** which You have incurred in connection with **Claims** made against You or any covered **Venture capital sponsor**, prior to disposition of such **Claim**. Any advancement of **Defense costs** shall be subject to the condition that such advanced amounts shall be repaid to Us by the **Insured** severally according to each party's respective interests if and to the extent the **Insured** shall not be entitled to coverage for such **Defense costs** under the terms and conditions of this Policy.

## IX. CLAIM AND POTENTIAL CLAIM NOTICES

A. As a condition precedent to coverage, the **Insured** shall give Us written notice of any **Claim** made against the **Insured** as soon as practicable after the Chief Executive Officer or functionally equivalent first learns of such **Claim**, but in no event later than (i) ninety (90) days after the expiration of the **Policy period** or (ii) the expiration of the Automatic Extended Reporting Period, if exercised.

B. If the **Insured** fails to provide notice of a **Claim** as soon as practicable as required by this Policy,

FL-10100A-NAC
(12-2021)

such late notice will not constitute a coverage defense with respect to such **Claim** unless We establish we were materially prejudiced by such late notice.

C.     If, during the **Policy period** or Extended Reporting Period, if applicable, You first become aware of a **Wrongful act** or circumstances that could give rise to a **Claim**, and if written notice of such **Wrongful act** or circumstances is given to Us during the **Policy period** or Extended Reporting Period, then any **Claim** subsequently arising from such **Wrongful act** shall be deemed to be a **Claim** first made at the time that We receive such notice.

D.     You shall include with any such notice of circumstance a description of the circumstances, the nature of any potential **Wrongful act**, the nature of the alleged or potential damage, the names of actual or potential claimants, and the manner in which the **Insured** first became aware of the circumstances.

E.     Notices to You shall be sent to You at the address specified in the Declarations.

## X. COOPERATION

With respect to all **Coverage parts**, You and the **Venture capital sponsor** agree to provide Us with all information, assistance and cooperation which We reasonably request, and further agree that, in the event of a **Claim**, You and the **Venture capital sponsor** will do nothing that shall prejudice Our position or potential or actual rights of recovery. The failure of any **Insured** to comply with this Section shall not be imputed to, or create a coverage defense under this Policy with respect to, any other **Insured**.

## XI. ALLOCATION

If the **Insured** incurs **Loss** that is only partially covered by this Policy because a **Claim** includes both covered and uncovered matters or because a **Claim** is made against both covered and uncovered parties, **Loss** shall be allocated as follows:

A.     100% of **Defense costs** shall be allocated to covered **Loss**; and

B.     **Loss** other than **Defense costs** shall be allocated between covered and non-covered **Loss** based upon the relative legal and financial exposures of the parties to covered and uncovered matters and covered and uncovered parties.

## XII. SUBROGATION

We shall be subrogated to all of the **Insured's** rights of recovery or rights to indemnification regarding any payment of **Loss** under this Policy. The **Insured** shall do everything necessary to secure and preserve such rights, including, without limitation, the execution of any documents necessary to enable Us to effectively bring suit in the **Insured's** name. The **Insured** will do nothing to prejudice Our position or any rights of recovery.

We shall not subrogate against any **Team member**.

## XIII. CHANGES IN EXPOSURE

A.     Change in Control

        If, during the **Policy period**:

FL-10100A-NAC
(12-2021)

EX. A - 018

1.  one of the following occurs:

    a.  any person or entity or group of persons and/or entities acting in concert acquires securities which result in ownership by such person(s) and/or entity(ies) of more than 50% of the outstanding securities representing the present right to vote for the election of directors or equivalent positions of the **Insured Organization**; or

    b.  the **Insured Organization** merges into or consolidates with another organization such that the **Insured Organization** is not the surviving organization, or

    c.  The **Insured Organization** completes an initial public offering of securities registered with the Securities and Exchange Commission; and

2.  You shall provide Us written notice of such Change in Control transaction as soon as practicable, but not later than 60 days after the effective date of such transaction,

then coverage shall continue until the termination of this Policy, provided that such coverage shall apply only with respect to **Claims** for **Wrongful act**s occurring prior to the effective date of such Change in Control transaction.

No coverage shall be available for any **Wrongful act** or **Loss** occurring after such Change in Control transaction.

Upon such Change in Control transaction, the entire premium for this Policy shall be deemed fully earned.

In the event of such Change in Control transaction during the **Policy period**, You shall have the right, upon payment of the additional premium set for in the Declarations, to an extension of coverage granted by the **Coverage part** for the Run Off Coverage Period set forth in the Declarations, which shall commence as of the effective date of such transaction.

B.  Merger or Acquisition

If, during the **Policy period**, the **Insured Organization**:

1.  acquires all or substantially all of the assets of an entity by merger or otherwise, and

2.  the total assets of such entity exceed fifty percent (50%) of the total consolidated assets of the **Insured Organization** as of the inception date of this Policy;

    then written notice thereof shall be given to the Insurer as soon as practicable, but in no event later than ninety (90) days from the effective date of such acquisition, together with such information as the Insurer may request.  Premium adjustment and coverage revisions shall be effected as may be required by the Insurer; provided, however, any such entity shall automatically be included as a **Subsidiary** for the first ninety (90) days after the effective date of such acquisition.

This section does not apply to, and no coverage shall be available under this Policy for, any:

FL-10100A-NAC
(12-2021)

Case 4:25-cv-00150-BP    Document 8-1    Filed 03/24/25    Page 19 of 46    EX. A - 019

1. **Wrongful act** or **Loss** of such other entity occurring before the Change in Control transaction; or

2. any **Interrelated Wrongful acts** thereto.

**C.** **Loss of Subsidiary Status**

If, before or during the **Policy period**, any organization ceases to be a **Subsidiary**, then coverage shall be available under this Policy for such **Subsidiary** and its **Insureds**, but only for **Claims** for covered **Wrongful acts** occurring before such transaction. No coverage shall be available to You for any **Wrongful act** or covered **Loss** occurring after such transaction.

If, before or during the **Policy period**, a **Plan** is terminated, coverage for such **Plan** under the Fiduciary Liability **Coverage part**, if purchased, shall continue until termination of such **Coverage part** with respect to **Wrongful acts** taking place prior to the termination of such **Plan**.

## XIV. APPLICATION

You represent and acknowledge that the statements and information contained in the **Application** are true, accurate, and complete, and form the basis of this Policy and are deemed to be incorporated into and constituting a part of this policy.

This Policy is issued in reliance upon the truth and accuracy of the **Application**.

If the **Application** contains misrepresentations or omissions that materially affect the acceptance of the risk or the hazard assumed by Us, this Policy shall be void ab initio and shall not afford coverage for any **Insured** who knew on the inception date of this Policy the facts that were not truthfully disclosed in the **Application**, whether or not the **Insured** knew the **Application** contained such misrepresentation or omission.

For the purpose of determining coverage, knowledge possessed by:

A. Any **Team member** shall not be imputed to any other **Team member**; and
B. the **Insured Organization**'s Chief Executive Officer, functionally equivalent, or anyone signing the **Application**

shall be imputed to all **Insureds** other than **Team members**.

## XV. SUITS AGAINST THE INSURER

No person or organization shall have any right under this Policy to join Us as a party to any **Claim** against You nor shall We be impleaded by the **Insured** in any **Claim**.

## XVI. ASSIGNMENT

No change in, modification of, or assignment of interest under this Policy shall be valid unless endorsed in writing by Us. This Policy and any and all rights hereunder are not assignable without Our prior written consent, which consent shall be in Our sole and absolute direction.

FL-10100A-NAC
(12-2021)

Case 4:25-cv-00150-BP    Document 8-1    Filed 03/24/25    Page 20 of 46    EX. A - 020

| Insured Name | Policy Number | Policy Effective Date |
|:---:|:---:|:---:|
| Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 |

## XVII. RESCISSION

We shall not have the right to rescind this Policy or any **Coverage part** for any reason other than as set forth in Section XIV above.

## XVIII. NAMED INSURED'S AUTHORITY

You shall act on behalf of all other **Insureds** regarding all matters under this Policy.

## XIX. CANCELLATION

A.    We may cancel this Policy only for non-payment of premium. In such case, We will mail or deliver written notice stating when, not less than twenty (20) days thereafter, the cancellation shall be effective. Cancellation shall not become effective if You pay such premium in full during such twenty (20) day period. Any notice of cancellation will state the effective date of cancellation. The **Policy period** will end on that date.

B.    You may cancel this Policy by sending written notice of cancellation to Us. Such notice shall be effective upon receipt by Us unless a later cancellation date is specified therein.

C.    If this policy is canceled, We will return to You any unearned premium, calculated pro rata, but the return of premium to You is not a condition precedent to cancellation.

D.    If the Insurer elects not to renew this Policy, the Insurer shall provide no less than sixty (60) days advance written notice thereof to the **Insured.**

## XX. BANKRUPTCY

The bankruptcy or insolvency of the **Insured Organization** or any of any **Team member's** estate will not relieve Us of Our obligation under this insurance. In the event of bankruptcy or insolvency of a **Insured Organization**, You shall waive and release any automatic stay or injunction in such proceeding that may apply to this Policy or its proceeds, and agree not to oppose or object to any efforts by Us or any **Insured** to obtain relief from any such stay or injunction.

## XXI. REFERENCES TO LAWS

Any statute, act, or code mentioned in this Policy shall be deemed to include all amendments of, and rules and regulations promulgated under, such statute, act, or code.

Any statute, act, or code mentioned in this Policy that is followed by the phrase "or any similar law" shall be deemed to include all similar laws of all jurisdictions throughout the world, including, without limitation, any common law.

## XXII. PRESUMPTIVE INDEMNIFICATION

You and any other **Insured Organization** agree to indemnify the **Team members**, including the

FL-10100A-NAC
(12-2021)

Case 4:25-cv-00150-BP    Document 8-1    Filed 03/24/25    Page 21 of 46  EX. A - 021

advancement of **Defense costs** incurred by the **Team member**, to the fullest extent permitted by law, or the certificate or articles of incorporation, charter, by-laws or limited liability company agreement or limited partnership agreement, if applicable, of an **Insured Organization**, or the functional or foreign equivalent of any of the foregoing.

## XXIII. PRIORITY OF NON-INDEMNIFIABLE LOSS PAYMENTS

We will pay **Loss** and other covered amounts as they become due and payable under this Policy without consideration of other future payment obligations. However, if **Loss** exceeds the remaining applicable Limit of Liability or in the event of the **Financial Impairment** of the **Insured Organization**, we will pay **Loss** in the following order:

first, pay Non-Indemnifiable **Loss**, then only after this payment;

with respect to whatever remaining amount of the applicable **Coverage part** Limit of Liability is available, pay such other **Loss** for which coverage is provided under the remaining coverage provided under this Policy.

## XXIV. DETERMINATION OF JURISDICTION FOR PUNITIVE DAMAGE AWARDS

A        With respect to:

1.        Judgments in which punitive, exemplary or multiplied damages are awarded;

2.        Fines, penalties or taxes incurred by **Team members** under Section 2(g) 2(B) of the Foreign Corrupt Practices Act, as amended and Section 308 of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246(a)); or

3.        Any amounts which may be considered uninsurable under the law pursuant to which this Policy is construed;

coverage provided by this Policy shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insured**, including without limitation the jurisdiction in which the Company, the **Insured**, this Policy or such **Claim** is located or has a substantial relationship.

B.        Changes

This Policy shall not be changed in any manner except by a written endorsement issued by Us.

C.        Titles and Headings

The titles of the headings of, and endorsements to, this Policy are for reference only. Such titles shall not be part of the terms and conditions of coverage.

D.        Premium

You will pay the premium stated in the Declarations. As may be agreed upon by you and us or as otherwise provided in this Policy, the premium may be adjusted at any time during the **Policy period** or any extensions of the **Policy period** based upon changes in the provisions of this Policy.

FL-10100A-NAC
(12-2021)

Case 4:25-cv-00150-BP        Document 8-1        Filed 03/24/25        Page 22 of 46        EX. A - 022

| Insured Name | Policy Number | Policy Effective Date |
|---|---|---|
| Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 |

E.     Choice of Law

Any disputes involving this Policy shall be resolved applying the law of the state or jurisdiction indicated in the Declarations as the principal address of the **Insured Organization**.

FL-10100A-NAC
(12-2021)

EX. A - 023

| Insured Name | Policy Number | Policy Effective Date |
|---|---|---|
| Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 |

# PRIVATE MANAGEMENT LIABILITY INSURANCE
# DIRECTORS, OFFICERS & ORGANIZATION LIABILITY
# INSURANCE COVERAGE PART

In consideration of the payment of the premium and subject to all of the terms, conditions and limitations of this Policy (including all endorsements attached hereto), we and you agree as follows:

## I. INSURING AGREEMENTS

A.  Non-Indemnifiable Directors & Officers Liability

We will pay **Non-Indemnifiable Loss** on behalf of the **Team Members** resulting from a Claim first made against the **Team Members** during the Policy Period or any applicable Extended Reporting Period and reported to Us pursuant to the terms of this Policy, for a **Wrongful Act** by the **Team Members**.

B.  Indemnifiable Directors & Officers

We will pay **Loss** on behalf of the **Insured Organization** that such **Insured Organization** has indemnified the **Team Members** resulting from a Claim first made against the **Team Members** during the Policy Period or any applicable Extended Reporting Period and reported to Us pursuant to the terms of this Policy, for a **Wrongful Act** by the **Team Members**.

C.  Entity Liability

We will pay **Loss** on behalf of the **Insured Organization** resulting from a Claim first made against such **Insured Organization** during the Policy Period or any applicable Extended Reporting Period and reported to Us pursuant to the terms of this Policy, for a **Wrongful Act** by the **Insured Organization**.

D.  **Derivative Costs**

We will pay on behalf of the **Insured Organization** any **Derivative Costs** the **Insured Organization** becomes legally obligated to pay as a result of a **Derivative Demand** first received by the Insured during the Policy Period or any applicable Extended Reporting Period and reported to Us pursuant to the terms of this Policy, for a **Wrongful Act** by a **Team Member**.

Our maximum liability for all **Derivative Costs** covered under this Insuring Agreement shall be the respective sublimit of liability set forth in the Declarations, which shall be part of and not in addition to the Coverage Part Limit of Liability.

E.  **Employed Lawyers**

We will pay **Loss** on behalf of the Insured resulting from a Claim first made against an **Employed Lawyer** during the Policy Period or any applicable Extended Reporting Period, and reported to Us pursuant to the terms of this Policy, for a **Wrongful Act** by the **Employed Lawyer**.

F.  **Crisis Costs**

FL-10200A-NAC
(06-2022)

Case 4:25-cv-00150-BP    Document 8-1    Filed 03/24/25    Page 24 of 46    EX. A - 024

| Insured Name | Policy Number | Policy Effective Date |
|---|---|---|
| Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 |

We will pay on behalf of the Insured any **Crisis Costs** the Insured pays as a result of a **Crisis** first occurring and reported to us during the Policy Period or any applicable Extended Reporting Period. Our maximum liability for all **Crisis Costs** covered under this Coverage Part shall be the respective sublimit of liability set forth in the Declarations, which shall be part of and not in addition to the Coverage Part Limit of Liability.

## II. DEFINITIONS

A. "**Claim**" means any:

   1. Written demand against the Insured for monetary damages or non-monetary or injunctive relief, including a written request to toll or waive a statute of limitations or engage in any alternative dispute resolution;

   2. Notice of violation, notice of charges, indictment, arrest, or extradition warrant summons, civil or criminal complaint, demand for arbitration, request for injunction, order to show cause, or other similar pleading or charging document;

   3. Administrative, regulatory or criminal proceeding commenced by the return of an indictment, information or similar pleading;

   4. Regarding Insuring Agreements A and B, **Inquiry** against a **Team Member** commenced by such **Team Member's** receipt of such **Inquiry** (regardless of whether the law enforcement or government investigative authority conducting such **Inquiry** has identified the **Wrongful Act** being investigated);

   5. Civil, criminal, administrative or regulatory investigation of an Insured by a government or regulatory authority or agency, which is commenced by the filing or issuance of a notice of charges, target letter, Wells Notice, an Insured's receipt of a subpoena, formal investigative order, civil investigative demand, search warrant or other similar request or document identifying such Insured as a person or entity against whom a proceeding described in (2) or (3) above may be brought; or

   6. Solely for purposes of Insuring Agreement D, any **Derivative Demand**.

B. "**Controlling Person**" means a **Team Member** who allegedly controls the **Insured Organization** through stock ownership or pursuant to an agreement, including any such **Team Member** described in Section 15 of the Securities Act of 1933, Section 20 of the Securities Exchange Act of 1934, or any similar federal, state or local rule or regulation.

C. "**Crisis**" means the publication of unfavorable information regarding the **Insured Organization** that is reasonably likely to lessen public confidence in the competence, integrity or viability of the **Insured Organization** to conduct business.

D. "**Crisis Costs**" means the reasonable fees, costs, and other expenses of a public relations consultant engaged by the Insured and approved by us, such approval not to be unreasonably withheld, to mitigate reputational harm to the Insured as a result of a **Crisis**.

E. "**Defense Costs**" means that part of **Loss** consisting of reasonable expenses, including attorneys' fees and experts' fees, incurred in the investigation, defense or appeal of a **Claim**. **Defense Costs** include the premium for any appeal, attachment or similar bond, provided that we have no obligation to issue such bond.

FL-10200A-NAC
(06-2022)

EX. A - 025

**Defense Costs** does not include any compensation, benefit expenses, or any of the Insured's overhead. Regarding any **Claim** that is an **Inquiry**, **Defense Costs** means **Inquiry Costs** only.|

F.    "**Derivative Costs**" means reasonable and necessary expenses incurred in the investigation and evaluation of a **Derivative Demand**, provided that **Derivative Costs** shall not include compensation, benefit expenses, or any of the Insured's overhead.

G.    "**Derivative Demand**" means a written demand by any security holder of the **Insured Organization**, in their capacity as such, upon the board of directors or managers of such **Insured Organization** to bring a civil proceeding on behalf of the **Insured Organization** against a **Team Member** for a **Wrongful Act** of such **Team Member** if such demand is made without the assistance, participation or solicitation of any Executive. A **Derivative Demand** shall be deemed commenced by the receipt by the board of directors or managers of such demand.

H.    "**Derivative Suit**" means any lawsuit against a **Team Member** for a **Wrongful Act** of such **Team Member** brought or maintained on behalf of, or in the name or the right of, an **Insured Organization** by any security holders of such **Insured Organization**, in their capacity as such, if such proceeding is made without the assistance, participation or solicitation of any Executive.

I.    "**Employed Lawyer**" means any **Team Member**, solely in their capacity as an Employee, who was or is employed by the **Insured Organization** to provide professional legal services for the **Insured Organization** while such **Team Member** is a licensed attorney compensated by the **Insured Organization** through wages or salary.

**Employed Lawyer** does not include any **Team Member** solely in their capacity as an Employee who is employed by, under contract with or affiliated with a private law firm. **Employed Lawyer** does not include a sole practitioner.

J.    "**Financial Impairment**" means the status of an organization resulting from:

1.    The appointment by any Regulatory Body of any receiver, trustee, examiner, conservator, liquidator, rehabilitator, or similar official to take control of, supervise, manage or liquidate the organization; or

2.    The organization becoming a Debtor in Possession within the meaning of the United States Bankruptcy Code or similar legal status under foreign law.

K.    "**Inquiry**" means:

1.    A civil, criminal, administrative, or regulatory investigation or **Inquiry** of a **Team Member** commenced by the **Team Member's** receipt of a subpoena, Wells Notice, target letter (within the meaning of Title 9, §11.151 of the U.S. Attorney's Manual), formal order of investigation, civil investigative demand, notice of charges, order to show cause, search warrant, S.E.C. Form 1661 or 1662, or other similar document, or the functional or foreign equivalent thereof;

2.    A written request or demand of a **Team Member** by a Regulatory Body for an interview, meeting, sworn testimony or documents in connection with the business of the **Insured Organization**, or in connection with such **Team Member** in his or her capacity as such;

3.    A written request or demand of a **Team Member** by the **Insured Organization** (including its board of directors or any committee of its board of directors) for an interview, meeting, sworn testimony or documents in connection with: (a) a **Derivative**

FL-10200A-NAC
(06-2022)

**Demand**, or (b) an investigation of the **Insured Organization** by a Regulatory Body.

**Inquiry** does not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, industry sweep, including any request for mandatory information from a Regulatory Body, conducted in an **Insured Organization's** and/or Regulatory Body's normal review or compliance process or any subpoena received by You as a non- party witness.

L. "**Inquiry Costs**" means reasonable costs, charges, fees and expenses incurred by a **Team Member** in connection with the preparation for or response to an **Inquiry**. **Inquiry Costs** does not include any:

  1. Compensation or benefits of any **Team Member**; or

  2. Costs of complying with any formal or informal discovery request or production request seeking documents, records or electronic information that are in our possession or any third-party.

M. "**Insured**" means:

  1. With respect to Insuring Agreement A and E, **Team Members**.

  2. With respect to all other Insuring Agreements B, C, D, and F, the **Insured Organization**.

N. "**Loss**" means the amount that an **Insured** is legally obligated to pay resulting from a **Claim**, including damages, settlements, judgments, pre- and post-judgment interest, **Defense Costs**, and Investigation Costs

  **Loss** also specifically includes:

  1. Any reasonable fees and expenses of any attorney representing any party who has brought a **Claim** against the **Insured** where such fees and expenses are awarded pursuant to a covered judgment against the **Insured** or a covered settlement (consented to by us, which consent shall not be unreasonably withheld or denied) to which you are a party;

  2. Regarding Insuring Agreement A, damages under Section of the Securities Exchange Act of 1934, as amended; and

  3. Civil fines or civil penalties incurred by **Team Members** under Section 2(g) 2(B) of the Foreign Corrupt Practices Act, as amended and Section 308 of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246(a)).

  **Loss**, other than **Defense Costs**, does not include:

  a) Fines, penalties and taxes, other than those set described in Subsection 3. of this Definition;

  b) The price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in, or assets of, an entity is inadequate. **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to any **Non-Indemnifiable Loss** in connection with such **Claim**;

FL-10200A-NAC
(06-2022)

c) Social security benefits, employment termination severance payments, other than any such payments negotiated with and consented to by us as part of a settlement, commissions or employment related benefits of any kind, including any contributions to an employee benefit plan;

d) Costs incurred by the **Insured** to comply with an order for non-monetary relief, including declaratory and injunctive relief, or with any agreement to provide such relief; or

e) Any amount which is uninsurable under the law pursuant to which this Policy is construed; provided that we will not assert that the portion of any settlement or judgment in a **Claim** arising from an initial or subsequent public offering of your securities constitutes uninsurable **Loss** due to the alleged violations of Sections 11 or 12 of the Securities Act of 1933 as amended (including alleged violations of Sections 11 or 12 of the Securities Act of 1933 by a **Controlling Person** pursuant to Section 15 of the Securities Act of 1933).

O. "**Non-Indemnifiable Loss**" means any **Loss** incurred by **Team Members** that the **Insured Organization** has not indemnified.

P. "**Outside Capacity**" means the position of director, officer, trustee, or other equivalent Executive position held by a **Team Member** in an **Outside Entity** if service in such position:

1. Takes place while such **Outside Entity** is not under Management Control; and

2. Is with Your express consent and knowledge.

Q. "**Outside Entity**" means any for profit or not-for-profit entity that is not otherwise an **Insured Organization**.

R. "**Pollutant**" shall mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acid, alkalis, asbestos, chemicals or waste of any kind, including any materials to be recycled, reconditioned or reclaimed.

S. "**Selling Shareholder**" means a **Team Member** in his or her capacity as an attempted or actual seller of securities issued by the **Insured Organization**.

T. "**Team Member**" means any:

1. **Executive**; or

2. **Employee**.

U. "**Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by:

1. A **Team Member** in their capacity as such or in an **Outside Capacity**;

2. A **Team Member** in their capacity as a **Controlling Person** or as a **Selling Shareholder**;

3. With respect to Insuring Agreement C, the **Insured Organization**; or

4. Any matter **Claim**ed against a **Team Member** solely by reason of their serving in such capacity, including service in an **Outside Capacity**.

FL-10200A-NAC
(06-2022)

Case 4:25-cv-00150-BP    Document 8-1    Filed 03/24/25    Page 28 of 46    EX. A - 028

### III. COVERAGE EXTENSIONS

A.      Spouses and **Domestic Partners**

Coverage shall apply to a **Claim** made against the lawful spouse or **Domestic Partner** of any **Team Members** provided that:

1.      Such **Claim** arises solely out of such person's status as the spouse or **Domestic Partner** of a **Team Member**, or such person's ownership of property sought as recovery for a **Wrongful Act**;

2.      The **Team Member** is named in such **Claim** along with the spouse or **Domestic Partner**; and

3.      No coverage shall apply to any **Claim** for a **Wrongful Act** of such spouse or **Domestic Partner**.

Coverage for such **Claim** shall be on the same terms and conditions (including, without limitation, the retention) as apply to a **Claim** made against a **Team Member**.

B.      Estates and Heirs

Coverage shall apply to a **Claim** made against a **Team Member**'s estate, heirs, assigns or legal representatives for a **Wrongful Act** of such **Team Member** shall be deemed a **Claim** made against such **Team Member**.

No coverage shall apply to any **Claim** for a **Wrongful Act** of such estate, heirs, assigns or legal representatives.

C.      Board Positions on Other Companies

Coverage shall apply to a **Claim** against a **Team Member** for a **Wrongful Act** in an **Outside Capacity**. Such coverage shall be specifically excess of any indemnification and insurance available from or provided by the Outside Organization in which the **Team Member** serves in an **Outside Capacity**. In no event, do we insure the Outside Organization.

D.      Venture Capital Sponsor

If any covered **Claim** also alleges that your Venture Capital Supporter or any director, officer or employee of the Venture Capital Supporter is vicariously liable for a **Wrongful Act** committed by You, then **Loss** that the Venture Capital Supporter becomes legally obligated to pay for such **Claim** will be considered **Loss** incurred by or on behalf of You arising from such **Claim**, subject to all provisions in this Policy and the following additional conditions:

1.      The **Claim** must be made and continuously maintained against both You and Your Venture Capital Supporter for Your **Wrongful Act**.

2.      If You do not tender the defense of the **Claim** to Us, You will appoint defense counsel that can defend both You and Your Venture Capital Supporter for such **Claim**, unless We permit otherwise.

3.      If You tender the defense of the **Claim** to Us, We will appoint defense counsel that can

FL-10200A-NAC
(06-2022)

defend both You and Your Venture Capital Supporter for such **Claim**, unless We permit otherwise.

4. There is no coverage for any **Loss** arising from any actual or alleged act, error, or omission by the Venture Capital Supporter.

E. Pre-**Claim** Costs

To the extent that You give notice to Us in accordance with Section 6 of the General Terms and Conditions of this Policy, of specific circumstances, complies with all other applicable terms of the Policy, and a **Claim** subsequently arises from such specific circumstances, **Defense Costs** shall also mean all reasonable legal fees you incur in the investigation and/or defense of any such specific circumstances that are incurred (i) on or after the date such notice is received by Us, and (ii) prior to the time such specific circumstances rises to the level of a **Claim**.

## IV. EXCLUSIONS

For the purpose of determining the applicability of any Exclusion set forth in this Exclusions Section, the **Wrongful Act** or knowledge of any **Team Member** shall not be imputed to any other **Team Member**, and only the **Wrongful Act** or knowledge of the Chief Executive Officer or functionally equivalent of the **Insured Organization** shall be imputed to the **Insured Organization**.

We shall not be liable under this Coverage Part to pay any **Loss** on account of that portion of any **Claim** made against You:

A. Bodily Injury and Property Damage

For any actual or alleged bodily injury, sickness, disease or death, mental anguish, emotional distress or humiliation of any person or damage to or destruction of any tangible property including **Loss** of use of such damaged or destroyed property; provided this exclusion shall not apply to (i) **Defense Costs** incurred by a **Team Member** in connection with a **Claim** against such **Team Member** for a violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any other jurisdiction, (ii) a **Claim** covered under Insuring Agreement A, or (iii) a **Claim** by one or more shareholders of the **Insured Organization** in their capacity as such.

B. Prior Notice

Based upon, arising out of, or attributable to any fact, circumstance, or **Wrongful Act** that, before the inception date of this Policy, was the subject of any notice given and accepted under any prior directors and officers liability or comparable insurance Policy;

C. Intellectual Property

Based upon, arising out of, or attributable to any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress, or service mark, misappropriation of ideas or trade secrets, or unauthorized disclosure of or access to confidential information; provided however, that this exclusion shall not apply to any **Derivative Demand**, **Derivative Suit**, or any **Claim** involving the purchase or sale of securities of the **Insured Organization** and shall be applicable only to Insuring Agreement C.

D. Contractual Liability

FL-10200A-NAC
(06-2022)

Based upon, arising out of, or attributable to any actual or alleged liability of the **Insured Organization** under any written contract or agreement, except to the extent that the **Insured Organization** would have been liable in the absence of such contract or agreement; provided however, that this exclusion shall not apply to any such **Claim** brought or maintained, directly or indirectly, by one or more securities holders of the **Insured Organization** in their capacity as a security holder, shall not be attributable to any breach of contract or agreement specifying the terms of the **Insured Organization**'s engagement of an Independent Contractor, and shall be applicable only to Insuring Agreement C.

E.    ERISA

For an actual or alleged violation of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

F.    **Insured** versus **Insured**

For any **Claim** brought or maintained by or on behalf of:

1.    an **Insured Organization**;

2.    a **Team Member** in any capacity; or

3.    an **Outside Entity** arising out of an **Insured's** service in an **Outside Capacity**;

Provided this exclusion does not apply to:

i.    **Defense Costs** covered under Insuring Agreement A;

ii.    Any **Claim** brought by a whistleblower pursuant to any federal, state, foreign or local whistleblower law;

iii.    Any **Claim** brought as a derivative action on behalf of the **Insured Organization**, by one or more persons who are not directors, officers, trustees, managers, or equivalent executives of the **Insured Organization**, and without the solicitation, assistance, active participation, or intervention of any **Insured** unless such solicitation, participation or intervention by the **Insured** is solely pursuant to or in compliance with a subpoena or similar legal process or is protected pursuant to any whistleblower statute, rule, or regulation;

iv.    Any **Claim** by or on behalf of a bankruptcy or insolvency receiver, trustee, examiner, conservator, liquidator, creditor's committee or rehabilitator of an **Insured Organization** or **Outside Entity** or any assignee of any of the foregoing;

v.    Any **Claim** maintained in any non-common law jurisdiction outside the United States of America;

vi.    Any **Claim** by a **Team Member** who has not served as a **Team Member** within one (1) year prior to the date on which the **Claim** is first made and who maintains such **Claim** without the active assistance or active participation of the **Insured Organization** or **Outside Entity**, or any other **Team Member** who is serving or has served as a **Team Member** within such one (1) year period; or

FL-10200A-NAC
(06-2022)

      vii.      Any **Claim** against a **Team Member** solely by reason of their serving in such capacity, including service in an **Outside Capacity**.

G.      Publicly Traded Securities

Based upon, arising out of, or attributable to any public offering of securities of a **Insured Organization** or the purchase or sale, or offer or solicitation of an offer to purchase or sell, of such securities subsequent to such public offering; provided that this exclusion shall not apply to any **Claim** in connection with the following:

1.      A **Wrongful Act** in an offering of securities of a **Insured Organization** to any accredited investor in a transaction that is exempt from registration under the Securities Act of 1933 ("accredited investor" shall have the meaning specified for such term in Rule 501 of Regulation D of the General Rules and Regulations promulgated under the Securities Act of 1933);

2.      Made by any security holders of a **Insured Organization** for the failure of the **Insured Organization** to undertake or complete an initial public offering of securities of such **Insured Organization**; or

3.      For any **Wrongful Act** relating to a **Insured Organization's** preparation for any public offering, including any road show presentation to potential investors or other similar presentation, made by the **Insured Organization** and its **Team Members** via any medium in connection with such public offering, if such offering does not occur.

H.      Personal Profit & Illegal Conduct

For any personal profit, remuneration, or financial advantage to which You are not legally entitled; or for any willful violation of any law, statute or regulation, or any deliberately fraudulent or criminal act, error, or omission committed by You;

If evidenced by a final and non-appealable adjudication adverse to You in the underlying action. For the purpose of applying these Personal Profit & Illegal Conduct exclusions:

1.      the **Wrongful Act**, knowledge of, or facts pertaining to any **Team Member** shall not be imputed to any other **Team Member**; and

2.      only the **Wrongful Act** by the Chief Executive Officer or functionally equivalent of any **Insured Organization** shall be imputed to a **Insured Organization**.

I.      Pollution

For actual or alleged seepage, pollution, radiation, emission, contamination or irritant of any kind, including but not limited to any **Pollutant**; provided, however, this exclusion shall not apply to any **Derivative Demand**, **Derivative Suit**, or any **Claim** involving the purchase or sale of securities of the **Insured Organization**.

J.      Professional Services

For the **Insured's** failure to perform professional services for others for a fee; provided this

FL-10200A-NAC
(06-2022)

exclusion shall not apply to any **Claim** by one or more securityholders of the **Insured Organization** in their capacity as such; provided however, this exclusion shall not apply to any **Derivative Demand**, **Derivative Suit**, or any **Claim** involving the purchase or sale of securities of the **Insured Organization**.

K.  Product Defect

Based upon or arising out of any actual or alleged malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency, inadequacy, or dangerous condition in such product or in its design, manufacture or labeling; except this exclusion does not apply to any **Claim** brought and maintained by one or more securityholders of the **Insured Organization** in their capacity as such.

L.  Employment Practices

Based upon, arising out of or attributable to any:

1.  Wrongful dismissal, discharge or termination of employment, including but not limited to dismissal, discharge or termination resulting from a breach of an express or implied contract relating to employment, whether actual or constructive;

2.  Harassment, including any type of sexual or gender harassment as well as racial, religious, sexual orientation, pregnancy, disability, age, or national origin-based harassment, or unlawful workplace harassment, including workplace harassment by any non-employee;

3.  Employment discrimination of any protected status established under federal, state or local law, ordinance or public Policy;

4.  Retaliation;

5.  Abusive or hostile work environment;

6.  Employment-related misrepresentation;

7.  Wrongful failure to employ or promote, wrongful deprivation of career opportunity, wrongful demotion, wrongful discipline, or failure to grant tenure;

8.  Negligent hiring or retention, negligent employee evaluation, or negligent supervision;

9.  Failure to provide or enforce adequate or consistent corporate policies and procedures relating to any **Wrongful Act**;

10.  Violation of the Uniformed Services Employment and Reemployment Rights Act or the Family and Medical Leave Act;

11.  Violation of an individual's civil rights if such conduct relates to matters described in paragraphs 1 - 9, including, but not limited to, any violation of the Civil Rights Act of 1866 or 42 U.S.C. Section 1983;

12.  Employment related wrongful infliction of emotional distress, mental anguish, or humiliation; or

13.  Libel, slander, defamation, false or wrongful imprisonment, invasion of privacy and other

FL-10200A-NAC
(06-2022)

personal injury allegations;

provided however this exclusion shall not apply to any **Claim** brought by one or more securityholders of the **Insured Organization** in their capacity as such.

M. Other Violations of Law

For any actual or alleged violation of the any of the responsibilities, obligations or duties imposed by:

1. The Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act of 1970, the National Labor Relations Act, the Fair Labor Standards Act, the Workers' Adjustment and Retraining Notification Act, the National Labor Relations Act, each of the foregoing as amended, or any similar provisions of any federal, state, local or foreign statutory or common law; or

2. Any law governing workers' compensation, unemployment insurance, unemployment compensation, social security, retirement benefits, disability benefits, or any similar provisions of any federal, state, local or foreign statutory or common law.

N. Wage and Hour/Misclassification

Notwithstanding anything to the contrary in Section IV. Exclusions E. Violation of Law above, based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any violation of any of the responsibilities, obligations or duties imposed by any federal, state, local or foreign statutory or common law (including, but not limited to the Fair Labor Standards Act), or any amendments thereto or regulations promulgated thereunder, governing wage, hour and payroll policies and practices (except the Equal Pay Act) including, without limitation:

1. the refusal, inability or failure of an **Insured Organization** or **Insured** to pay wages or overtime pay, or any amounts representing such wages or pay, for services rendered or time spent in connection with work related activities;

2. improper pay deductions taken by an **Insured Organization** or **Insured** from any employee or purported employee;

3. improper classification of any employee or purported employee; or

4. failure to provide or enforce any legally required rest or meal breaks.

## V. ADDITIONAL LIMIT OF LIABILITY

Additional Side A Limit

A. Notwithstanding anything in this Policy or this Coverage Part to the contrary, the Additional Excess Aggregate Limit of Liability Dedicated for Directors and Officers will be an additional Excess Limit of Liability in an aggregate amount not to exceed the amount stated in Additional Non-Indemnifiable Limit for Directors and Officers Liability Coverage of the Declarations, which amount is in addition to and not part of the Limits of Liability stated in Insuring Agreement A. Non-Indemnifiable Directors & Officers Liability Coverage of the Declarations.

In the event the Additional Excess Aggregate Limit of Liability Dedicated for Directors and Officers is exhausted by payment of **Loss**, or has been tendered to or on behalf of Directors and Officers, then any and

FL-10200A-NAC
(06-2022)

Case 4:25-cv-00150-BP    Document 8-1    Filed 03/24/25    Page 34 of 46    EX. A - 034

all obligations of the Insurer hereunder shall be deemed to be completely fulfilled and extinguished.

B.  No coverage shall be provided by Section V of this Coverage Part for the first **Claim** made for which coverage is provided under this Coverage Part. This Additional Excess Aggregate Limit of Liability Dedicated for Directors and Officers is available solely for the **Loss** resulting from any subsequent **Claim** that is covered under IINSURING AGREEMENT A of this Coverage Part. The first **Claim** made for which coverage is provided under this Coverage Part shall be determined by the chronological time such **Claim** was made regardless of when coverage is acknowledged by the Insurer.

C.  The Additional Excess Aggregate Limit of Liability Dedicated for Directors and Officers shall be excess of any insurance available to pay **Loss** for such **Claims**, including this Policy and all insurance that is specifically excess to this Policy. Such excess insurance must be completely exhausted by payment of **Loss**, damages or cost of defense, as those terms are defined by such excess insurance, before the Insurer shall have any obligation to make any payment on account of the Additional Excess Aggregate Limit of Liability Dedicated for Directors and Officers.

D.  For purposes of this provision only, Directors and Officers shall only mean:

1.  any past, present or future duly elected or appointed director, officer or member of the board of managers or management committee of the **Insured Organization**;

2.  any in-house general counsel of the **Insured Organization**; or

3.  any executive of the **Insured Organization** located outside of the United States of America who holds a position with respect to the **Insured Organization** equivalent to any position described in Sections V.D.1 or V.D.2 above.

## VI. OTHER INSURANCE

Coverage under this Coverage Part shall apply only in excess of any other valid and collectible insurance, unless such other insurance is written specifically excess of this Coverage Part by reference to this Policy's Policy Number.

Regarding **Loss** attributable to the **Wrongful Acts** of a **Team Member**, this Coverage Part shall apply as primary insurance with respect to: (i) any venture capital management liability, general partner management liability, or other similar management or professional liability insurance maintained by any of Your direct or indirect shareholder; (ii) any indemnification which may be owed to a **Team Member** by any of Your current or former direct or indirect shareholders (or any affiliate or control person of such shareholder); or (iii) any personal umbrella or other personal liability insurance Policy that may be available to a **Team Member**.

Any coverage for a Claim in connection with a **Team Member** serving in an **Outside Capacity** for an **Outside Entity** shall be specifically excess of any indemnity and insurance available to such **Team Member** by reason of their serving in such capacity.

FL-10200A-NAC
(06-2022)

| Insured Name | Policy Number | Policy Effective Date |
|---|---|---|
| Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 |

## PRIVATE MANAGEMENT LIABILITY INSURANCE
## EMPLOYMENT PRACTICES LIABILITY INSURANCE COVERAGE PART

In consideration of the payment of the premium and subject to all of the terms and conditions of this Policy (including all endorsements attached hereto), we and you agree as follows:

### I. INSURING AGREEMENTS

    A.    Employment Practices Liability

    We will pay **Loss** the **Insured** is legally obligated to pay arising from a **Claim** first made against the **Insured** during the Policy Period or any applicable Extended Reporting Period, and reported to Us pursuant to the terms of this Policy, for a **Wrongful Act**.

    B.    Third Party Employment Practices Liability

    We will pay **Loss** the **Insured** is legally obligated to pay arising from a **Claim** first made against the **Insured** during the Policy Period or any applicable Extended Reporting Period, and reported to Us pursuant to the terms of this Policy, for a **Third Party Wrongful Act**.

    C.    Defense for **Wage and Hour Actions**

    We will reimburse **Defense Costs** which the **Insured** is legally obligated to pay by reason of a **Wage and Hour Action** first made against the **Insured** during the Policy Period or, if applicable, the Extended Reporting Period and reported to Us pursuant to the terms of this Policy, for a **Wage and Hour Wrongful Act** taking place prior to end of the Policy Period. The maximum sublimit of liability under this section for all covered **Defense Costs** for a **Wage and Hour Action**, combined, shall be the Wage and Hour Costs Sublimit of Liability set forth in the Declarations.

### II. DEFINITIONS

    A.    "**Claim**" means:

        1.    A written demand against the **Insured** for monetary damages or non-monetary (including injunctive) relief, including a written demand to toll or waive a statute of limitations;

        2.    A civil, judicial, administrative, regulatory or arbitration proceeding or a formal governmental investigation against the **Insured** seeking damages or other relief, commenced by the service of a complaint or similar pleading, including any appeal therefrom;

        3.    A civil proceeding against the **Insured** before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body, commenced by the filing of a notice of charges, investigative order or similar document;

        4.    A criminal proceeding brought for a **Wrongful Act** in a court outside of the United States against the **Insured**, commenced by a return of an indictment or similar document, or receipt or filing of a notice of charges; or

        5.    A written demand or request for arbitration, mediation, or other alternative dispute resolution, which shall be deemed first made upon the **Insured's** receipt of the demand,

FL-10300A-NAC
(06-2022)

Case 4:25-cv-00150-BP    Document 8-1    Filed 03/24/25    Page 36 of 46   EX. A - 036

brought by or on behalf of any past, present, future of prospective Employee, or an applicant or prospective applicant for employment with the **Insured Organization**, in their capacity as such. **Claim** does not include a labor or grievance proceeding, which is pursuant to a collective bargaining agreement.

B.      "**Defense Costs**" means that part of **Loss** consisting of reasonable expenses, including attorneys' fees and experts' fees, incurred in the investigation, defense or appeal of a **Claim**.

      **Defense Costs** include the premium for any appeal, attachment or similar bond, provided that we have no obligation to issue such bond.

      **Defense Costs** does not include any compensation, benefit expenses, or any portion of the **Insured's** overhead.

C.      "**Insured**" means:

      1.      You;

      2.      Any **Insured Organization**; or

      3.      Any **Team Member**.

D.      "**Loss**" means the damages, judgments, settlements, front pay and back pay, pre- judgment or post judgment interest awarded by a court, and **Defense Costs** incurred by the **Insured**.

      **Loss** also includes liquidated damages awarded under the Age Discrimination in Employment Act, Equal Pay Act, or Family Medical Leave Act.

      **Loss** does not include:

      1.      Taxes, fines or penalties except with respect to liquidated damages as provided above;

      2.      Matters or amounts uninsurable under the laws pursuant to which this Policy is construed;

      3.      The cost of any remedial, preventative or other non-monetary relief, including without limitation any costs associated with compliance with any such relief of any kind or nature imposed by any judgment, settlement or governmental authority;

      4.      Amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract;

      5.      Disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing benefit payments;

      6.      The costs to modify or adapt any building or property to be accessible or accommodating, or to be more accessible or accommodating, to any disabled person;

      7.      The cost of creating or reinstating employment;

      8.      Any amount owed as wages, commissions, or salaries to any Employee, other than front pay or back pay; or

      9.      Any amount for which the **Insured** is not financially liable or legally obligated to pay.

FL-10300A-NAC
(06-2022)

E.  "**Retaliation**" means an **Insured's** actual or alleged adverse or harmful action in return for perceived injuries or wrongs perpetrated as a response to:

    1.  The disclosure or threat of disclosure by an Employee to a superior or to any governmental agency of any act by the **Insured** where such act is alleged to be a violation of any federal, state local or foreign law, whether common or statutory, or any rule or regulation promulgated thereunder;

    2.  The actual or attempted exercise by an Employee of any right that such Employee has under law, including rights under any worker's compensation law, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights;

    3.  The filing of any **Claim** under the Federal False Claims Act or any similar federal, state, local or foreign "whistleblower" law or "whistleblower" provision of any law; or

    4.  Any legally-protected Employee work stoppage or slowdown.

F.  "**Team Member**" means any:

    1.  Executive; or

    2.  Employee.

G.  "**Third Party Wrongful Act**" means any actual or alleged discrimination or harassment, whether sexual or otherwise, in violation of a person's civil rights, committed by the **Insured** against any natural person who is a customer, vendor, service provider, client, or other business invitee of the **Insured Organization** other than an Employee.

H.  "**Wage and Hour Action**" means:

    1.  A written demand against the **Insured** for damages or other relief; or

    2.  A civil, judicial, administrative, regulatory, or arbitration proceeding or a formal governmental investigation against You seeking damages or other relief, commenced by the service of a complaint or similar pleading, including any appeal therefrom,

brought by or on behalf of one or more Employees solely alleging any **Wage and Hour Wrongful Act**.

I.  "**Wage and Hour Wrongful Act**" means any actual or alleged violation(s) of state, local or foreign statutory or common law (including, but not limited to the Fair Labor Standards Act or Wage Payment and Collection Act), or any amendments thereto, or rule or regulations promulgated thereunder governing wage, hour and payroll policies and practices including, but not limited to:

    1.  The refusal, inability or failure of a **Insured Organization** or **Team Member** to pay wages or overtime pay, off-the- clock work, on-call time compensation, compensation for waiting time and dressing time, minimum wage compensation, reimbursement of expenses or any amounts representing such wages or pay or expenses, for services rendered or time spent in connection with work related activities;

    2.  Improper pay deductions taken by a **Insured Organization** or **Team Member** from any

FL-10300A-NAC
(06-2022)

employee or purported employee, including but not limited to garnishments and withholdings;

3. Improper classification of any employee or purported employee or improper or failure to maintain accurate records;

4. Child labor;

5. Pay equity or comparable worth;

6. Failure to provide or enforce any legally required rest or meal breaks; or

7. Any similar practices, policies, or procedures.

However, **Wage and Hour Wrongful Act** does not include actual or alleged violations of the Equal Pay Act of 1963, and any amendments thereto.

J. "**Wrongful Act**" means any actual or alleged:

1. Wrongful dismissal, discharge or termination of employment, including but not limited to dismissal, discharge or termination resulting from a breach of an express or implied contract relating to employment, whether actual or constructive;

2. Harassment, including any type of sexual or gender harassment as well as racial, religious, sexual orientation, pregnancy, disability, age, or national origin-based harassment, or unlawful workplace harassment, including workplace harassment by any non-employee;

3. Employment discrimination of any protected status established under federal, state or local law, ordinance or public policy;

4. **Retaliation**;

5. Abusive or hostile work environment;

6. Employment-related misrepresentation;

7. Wrongful failure to employ or promote, wrongful deprivation of career opportunity, wrongful demotion, wrongful discipline, or failure to grant tenure;

8. Negligent hiring or retention, negligent employee evaluation, or negligent supervision;

9. Failure to provide or enforce adequate or consistent corporate policies and procedures relating to any **Wrongful Act**;

10. Violation of the Uniformed Services Employment and Reemployment Rights Act or the Family and Medical Leave Act;

11. Violation of an individual's civil rights if such conduct relates to matters described in paragraphs 1 - 9, including, but not limited to, any violation of the Civil Rights Act of 1866 or 42 U.S.C. Section 1983;

12. Employment related wrongful infliction of emotional distress, mental anguish, or humiliation; or

FL-10300A-NAC
(06-2022)

13. Libel, slander, defamation, false or wrongful imprisonment, invasion of privacy and other personal injury allegations if such conduct relates to matters described in paragraphs 1-9, committed or attempted against an Employee or applicant for employment with the **Insured Organization**.

## III. EXCLUSIONS

For the purpose of determining the applicability of any Exclusion set forth in this Exclusions Section, the **Wrongful Act** or knowledge of any **Team Member** shall not be imputed to any other **Team Member**, and only the **Wrongful Act** or knowledge of the Chief Executive Officer or functionally equivalent of the **Insured Organization** shall be imputed to the **Insured Organization**.

We shall not be liable under this **Coverage Part** to pay any **Loss** on account of that portion of any **Claim** made against You:

A. Bodily Injury and Property Damage

For bodily injury, sickness, emotional distress, mental anguish, humiliation, disease or death of any person, other than employment-related mental anguish, humiliation, or emotional distress; or damage to or destruction of any tangible property or electronic data, including loss of use of any such property or data whether or not it is damaged or destroyed.

B. Violation of Labor Law

For an actual or alleged violation of any law governing or regulating:

1. the rights of employees with respect to unions, unionizing, or collective activities in the workplace, or any obligations of employers with respect to such employee activities, including but not limited to the National Labor Relations Act or any similar law;

2. the obligations of an employer to notify, discuss, or bargain with its employees or others in advance of any plant or facility closing or mass layoff, or any similar obligation, including, but not limited to, the Worker Adjustment and Retraining Notification Act or any similar law;

3. workplace safety and health, including, but not limited to, the Occupational Safety and Health Act or any similar law; or

4. workers' compensation, unemployment insurance, social security, or disability benefits, or any similar law;

except this exclusion does not apply to any **Claim** for **Retaliation** covered under the Employment Practices Liability Coverage Part.

C. Prior Notice

Based upon, arising out of, or attributable to any fact, circumstance, or **Wrongful Acts** that, before the inception date of this Policy, was the subject of any notice given and accepted under any prior employment practices liability or comparable insurance policy.

D. Contractual Liability

FL-10300A-NAC
(06-2022)

Based upon, arising out of, or attributable to any liability under any written contract or agreement, provided this exclusion shall not apply to:

1.  The extent that liability would have been incurred in the absence of such contract or agreement; or

2.  **Defense Costs**

E.  Other Violations of Law

For any actual or alleged violation of:

Any law governing workers' compensation, unemployment insurance, social security, disability benefits, or any similar federal, state, or local statutory or regulatory law; provided this exclusion shall not apply to any actual or alleged obligation of any **Insured** pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 or Health Insurance Portability and Accountability Act of 1996, as amended.

F.  Labor Disputes

Based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any lockout, strike, picket line, hiring of replacement workers or other similar actions in connection with labor disputes or labor negotiations.

G.  Conduct

Based upon, arising out of, or attributable to any willful violation of law, or any dishonest, deliberately fraudulent or criminal act committed by any **Insured**; if evidenced by a final and non-appealable adjudication in the underlying action or proceeding.


**IV. OTHER INSURANCE**

Coverage under this Coverage Part shall apply only in excess of any other valid and collectible insurance, unless such other insurance is written specifically excess of this Coverage Part by reference to this Policy's Policy Number.

FL-10300A-NAC
(06-2022)

| Endorsement No. | Insured Name | Policy Number | Policy Effective Date | Endorsement Effective Date |
|---|---|---|---|---|
| 1 | Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 | 2/5/2023 |

# MANUSCRIPT ENDORSEMENT

# SEPARATE RETENTION FOR SPECIFIC CIRCUMSTANCES ENDORSEMENT

It is agreed:

This endorsement modifies insurance provided under the following:

EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

In consideration of the payment of premium, it is hereby agreed and understood that:

Solely with respect to any **Claim** based upon, arising out of, or in any way involving the circumstances shown in the Schedule of this endorsement, Item 4. Retentions of the above listed coverage parts is amended as scheduled in this endorsement.

With respect to all other **Claims**, Item 4. Retentions of the above listed coverage parts remains unchanged.

| Circumstances | Retention |
|---|---|
| Staffing & Vehicle Dealership Operations | $100,000 |

All other terms and conditions remain unchanged.

FL-99999A-NAC
(01-2022)

Case 4:25-cv-00150-BP    Document 8-1    Filed 03/24/25    Page 42 of 46    EX. A - 042

| Endorsement No. | Insured Name | Policy Number | Policy Effective Date | Endorsement Effective Date |
|---|---|---|---|---|
| 2 | Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 | 2/5/2023 |

## MANUSCRIPT ENDORSEMENT

## ADDITIONAL LIMIT FOR DEFENSE

It is agreed:

This endorsement modifies insurance provided under the following:

EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

In consideration of the payment of premium, it is hereby agreed and understood:

Solely with respect to the Coverage Part listed above, in addition to the maximum aggregate limit of liability set forth in Item 3 of the Declarations Page, additional $1,000,000 in the aggregate will be available for all **Claims** under the stated Coverage Part, for **Defense Costs** only. This additional limit will not be applicable to any other **Loss**. The Insurer's total liability for all **Loss** under this policy shall not excess the amount stated in Item 3 of the Declarations Page plus $1,000,000.

All other terms and conditions remain unchanged.

FL-99999A-NAC
(01-2022)

| Endorsement No. | Insured Name | Policy Number | Policy Effective Date | Endorsement Effective Date |
|---|---|---|---|---|
| 3 | Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 | 11/03/2023 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CANCELLATION ENDORSEMENT

It is hereby understood and agreed that, effective 11/03/2023, this Policy is cancelled, and the **Insurer** shall return a premium amount of $0 to the **Named Insured**.

All other terms and conditions remain unchanged.

| Endorsement No. | Insured Name | Policy Number | Policy Effective Date | Endorsement Effective Date |
|---|---|---|---|---|
| 4 | Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 | 11/3/2023 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**RUNOFF / WIND DOWN ENDORSEMENT**

This Endorsement modifies the coverage provided under the following insurance policy:



**BFLPDOTMO010300_020487_02**

In consideration of the additional premium of ██████, it is hereby understood and agreed that,

the Policy is amended to add the following section:

**RUNOFF COVERAGE**

1. Section VII. Extended Reporting Period of the GENERAL TERMS AND CONDITIONS, is deleted in its entirety.
2. Section IV. Exclusions, of the DIRECTORS AND OFFICERS LIABILITY COVERAGE PART, Section III. Exclusions of the EMPLOYMENT PRACTICES LIABILITY COVERAGE PART and the FIDUCIARY LIABIITY COVERAGE PART are amended by adding the following exclusion that shall apply to this policy:

   The Insurer shall not be liable for Loss in connection with any Claim for, based upon, arising from or in any way related to any Wrongful Act committed or allegedly committed on or after 11/03/2023.

3. Section IX. Claims and Potential Claim Notices, D of the GENERAL TERMS AND CONDITIONS is deleted in its entirety.
4. Section XIX. Cancellation of the GENERAL TERMS AND CONDITIONS, is deleted in its entirety and replaced with the following:

   The Insurer may cancel this Policy only for non-payment of premium by sending not less than ten (10) days notice to the Company at its last known address. The Company may not cancel this policy.

5. The GENERAL TERMS AND CONDITIONS is amended by adding the following:

   XXV. Fully Earned Premium

       A. The entire premium for this Policy shall be deemed fully earned as of the Policy inception date

6. The Policy Period shown in the Declarations Page is amended to read:
   a. 02/05/2023 to 11/03/2024
7. The fact that this Policy is extend by virtue of the purchase of this Run-Off Period shall not in any way increase the Limits of Liability set forth in the Declarations Page.

| Endorsement No. | Insured Name | Policy Number | Policy Effective Date | Endorsement Effective Date |
|---|---|---|---|---|
| 4 | Empirical Prime LLC | BFLPDOTMO010300_020487_02 | 2/5/2023 | 11/3/2023 |

**Wind Down Coverage**

1. Section VII. Extended Reporting Period of the GENERAL TERMS AND CONDITIONS, is deleted in its entirety.
2. The GENERAL TERMS AND CONDITIONS section of the policy is amended by the addition of the following exclusion that shall apply to this Policy:

   The Insurer shall not be liable for Loss in connection with any Claim for, based upon, arising from, or in any way related to any Wrongful Act committed or allegedly committed on or after (INSERT TRANSACTION DATE), provided however, that solely with respect to the DIRECTORS AND OFFICERS LIABILITY COVERAGE PART and FIDUCIARY LIABILITY COVERAGE PART, this exclusion shall not apply to Loss resulting from any Wind Down Wrongful Act(s) occurring on or after (INSERT TRANSACTION DATE).

   "Wind Down Wrongful Act(s)" means Wrongful Act(s) arising out of the Company's responsibilities in the winding down of the Corporation.
3. Section IX. Claims and Potential Claim Notices, D of the GENERAL TERMS AND CONDITIONS is deleted in its entirety.
4. Section XIX. Cancellation of the GENERAL TERMS AND CONDITIONS, is deleted in its entirety and replaced with the following:

   The Insurer may cancel this Policy only for non-payment of premium by sending not less than ten (10) days notice to the Company at its last known address. The Company may not cancel this policy.

5. The GENERAL TERMS AND CONDITIONS is amended by adding the following:

   XXV. Fully Earned Premium

       A. The entire premium for this Policy shall be deemed fully earned as of the Policy inception date
6. The Policy Period in the Declarations Page is amended to read for the Winding Down Coverage as: 02/05/2023 to the shorter of: (i) completion of the winding down of the Corporation; or (ii) one (1) year from the Transaction Date.
7. The fact that this Policy is extended by virtue of the purchase of this for the Winding Down Coverage shown shall not in any way increase the Limits of Liability set forth in the Declarations Page.

All others terms and conditions remain unchanged.