**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| BRENT KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25-00150-CV-W-BP |
| | ) | |
| TEXAS INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING MOTION TO DISMISS

Plaintiff Brent King, in his capacity as receiver of Empirical Prime, LLC and its subsidiaries ("Empirical"), brought this suit to enforce an insurance policy issued by Defendant. Defendant Texas Insurance Company has now filed a Motion to Dismiss, (Doc. 7), which, for the following reasons, is **GRANTED**.

## I.  BACKGROUND

According to the Complaint,[1] Empirical borrowed money from Enterprise Bank and Trust, LLC ("Enterprise Bank").  The loan agreement prohibited Empirical from borrowing from other banks during the pendency of the loan.  (Doc. 1-2, ¶ 14(c).)  Despite this prohibition, several of Empirical's officers (the "Officers") borrowed millions of dollars on behalf of Empirical from other banks.  (Doc. 1-2, ¶ 14(c).)  To obtain these loans, the Officers allegedly submitted false, incomplete, and inaccurate financial statements to the new lenders.  (Doc. 1-2, ¶ 14(e).)  The Officers also manipulated QuickBooks entries and Income Statements to reflect that Empirical was in a substantially better financial position than it actually was.  (Doc. 1-2, ¶ 14(g).)  In addition to their loan-related misconduct, the Officers allegedly inappropriately accelerated advance pay from Empirical's customers (without fulfilling some of the orders), improperly comingled funds,

---

[1] With the case now in federal court, federal terminology will be used.

and distributed certain funds for their personal benefit.  (Doc. 1-2, ¶ 14 (n)-(q), (s)-(v).)  Eventually, Empirical defaulted on the loans and ended up in a receivership.  In a state court proceeding, (the "Receivership Action"), Enterprise Bank and Trust, LLC sued Empirical for (1) Appointment of a Receiver, (2) Suit on Note, (3) Replevin, and (4) Foreclosure of Security Interests.[2]  Plaintiff was appointed as the receiver for Empirical.

Prior to the alleged misconduct of Empirical's Officers, Defendant issued Empirical a Directors, Officers, & Organization Liability Insurance Policy (the "Policy").  Three coverage provisions relevant to the issues in this case state that Defendant will pay for:

1. "Loss on behalf of the Team Members resulting from a Claim first made against the Team Members . . . for a Wrongful Act by the Team Members[;]"

2. "Loss on behalf of the Insured Organization that such Insured Organization has indemnified the Team Members resulting from a Claim first made against the Team Members . . . for a Wrongful Act by the Team Members[;]"

3. "Loss on behalf of the Insured Organization resulting from a Claim first made against such Insured Organization . . . for a Wrongful Act by the Insured Organization."

(Doc. 10-2, p. 23.)[3]  The Officers qualify as "Team Members."  (Doc. 10-2, p. 27.)  The Policy defines a "Loss" as "the amount that an Insured is legally obligated to pay resulting from a Claim, including damages, settlements, judgments, pre- and post-judgment interest, Defense Costs, and Investigation Costs."  (Doc. 10-2, p. 26.)  The Policy defines a "Claim" as a "[w]ritten demand against the Insured for monetary damages or non-monetary or injunctive relief, including a written request to toll or waive a statute of limitations or engage in any alternative dispute resolution."  (Doc. 10-2, p. 24.)  However, the Policy explicitly exempts from coverage any claims "[b]ased

---

[2] The Court may take judicial notice of documents from other court proceedings. *E.g.*, *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007); *see also Stahl v. United States Dep't of Ag.*, 327 F.3d 697, 700 (8th Cir. 2003).  The Court takes judicial notice of the Receivership Action, titled *Enterprise Bank & Trust v. Mulungas II, LLC, et al.*, Case No. 2316-CV28464 filed in Jackson County, Missouri Circuit Court.  The information regarding the Receivership Action comes from Case.net, Missouri's online case management database.

[3] All page numbers correspond to those listed in the CM/ECF system.

upon, arising out of, or attributable to any actual or alleged liability of the Insured Organization under any written contract or agreement[.]" (Doc. 10-2, p. 29-30.)

Plaintiff, as Empirical's receiver, sent two letters to Defendant outlining the Officers' wrongdoing (the "Letters") and claiming that Defendant owed Empirical under the Policy because it had a duty to compensate Empirical for losses created by the Officers' alleged misconduct. (Doc. 1-2, ¶¶ 13-14, 21-23.) The Letters "provided Defendant with extensive factual details and documentary evidence . . ." (Doc. 1-2, ¶ 14.) When Defendants did not respond or pay, Plaintiff filed this suit seeking compensation under the Policy for the losses resulting from the Officers' misconduct. Defendant argues it is not obligated to pay under the Policy and the case should be dismissed. The Court resolves the parties' arguments below.

## II. ANALYSIS

Under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008); *see also Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of

3

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In making this evaluation, the Court is limited to a review of the Complaint, exhibits attached to the Complaint, and materials necessarily embraced by the Complaint. *E.g.*, *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading[]" are considered necessarily embraced by the complaint. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Kushner v. Beverly Enters.*, Inc., 317 F.3d 820, 831 (8th Cir. 2003)). "Where, as here, the claims relate to a written contract that is part of the record in the case, we consider the language of the contract when reviewing the sufficiency of the complaint." *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010). Where the pleadings contradict the contract before the Court, the Court is not required to accept the contradictory allegations as fact. *See Meardon v. Reg.*, 994 F.3d 927, 935 (8th Cir. 2021). "The interpretation of a contract is a question of law[.]" *Pac. Life Ins. Co. v. Blevins*, 92 F.4th 734, 737 (8th Cir. 2024) (internal citations omitted).

While the Policy was not attached to the Complaint, the Parties do not dispute that the Policy attached to the Suggestions in Support of the Motion to Dismiss is an authentic and accurate copy of the agreement between the parties.[4] All Counts in the Complaint allege violations of the Policy such that the Complaint necessarily embraces the Policy. Therefore, it is proper for the Court to consider the Policy as well as the Complaint in coming to its decision here.

### A.  Standing

---

[4] Both the Suggestions in Support of this Motion and Plaintiff's Response attach the Policy.  The attachment to Plaintiff's Response is slightly longer and includes other policy provisions, but the relevant language is the same in both documents.  (Docs. 8-1, 10-2.)

Defendant challenges Plaintiff's standing to bring suit and because the Court must have jurisdiction to hear this matter, it first addresses the issue of standing. Article III standing requires Plaintiff demonstrate he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Defendant does not dispute that Plaintiff has sufficiently alleged these requirements and the Court does not find them lacking.

Instead, Defendant disputes standing based on principles of Missouri law; in Missouri, "[o]nly parties to a contract and any third-party beneficiaries of a contract have standing to enforce that contract." *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. 2007). An injured person cannot directly sue the insurance company indemnifying the person who caused the injury, because the injured party is neither a party to the contract or third party beneficiary. *Desmond v. Am. Ins. Co.*, 786 S.W.2d 144, 145 (Mo. Ct. App. 1989). Defendant argues that because the Complaint should be interpreted as Plaintiff suing Defendant directly for damages created by the Officers, the Court should apply the logic of cases like *Desmond* and treat Plaintiff like a third-party without standing. However, Empirical *is* a party to the Policy and Plaintiff brings this suit as the Receiver for Empirical.[5] While Plaintiff is asserting an obligation that Defendant pay for losses created by the Officers, Plaintiff is not asserting this claim as a disinterested third-party, but rather as an insured trying to receive the bargained-for coverage pursuant to its policy. Plaintiff is not a third-party under these circumstances, and it has standing under Article III to assert this claim

### B.  Whether a Breach is Alleged

---

[5] According to the Stipulated Order Appointing Receiver in the Receivership Action, Brent King, as the Receiver for Empirical and its relevant subsidiaries, has the authority to "assert any rights, claims, or chooses in action" on behalf of Empirical. This is consistent with Mo. Rev. Stat. § 515.5545(3).

The Complaint asserts claims for (1) breach of contract and (2) vexatious refusal to pay (under Mo. Rev. Stat. § 375.420 and § 375.296). To prevail on a breach-of-contract claim under Missouri law, the plaintiff must prove "(1) the existence of a valid contract; (2) the rights and obligations of each party; (3) a breach; and (4) damages." *Kieffer v. Icaza*, 376 S.W.3d 653, 657 (Mo. 2012). To state a claim for breach of contract, a plaintiff must identify the rights or obligations that were allegedly breached. *Gillis v. Principia Corp.*, 832 F.3d 865, 871-72 (8th Cir. 2016). Further, Plaintiff's claim for vexatious refusal requires him to demonstrate that Defendant is obligated to pay under the Policy; therefore, if Defendant has no obligation to pay, the vexatious refusal to pay claim must fail. *See Aziz v. Allstate Ins. Co.*, 875 F.3d 865, 869 (8th Cir. 2017) (citation omitted); *see also Acad. Bank, N.A. v. AmGuard Ins. Co.*, 116 F.4th 768, 777 (8th Cir. 2024).

Plaintiff alleges that Defendant breached the Policy by "failing to pay coverage for the losses" caused by the Officers' misconduct. Defendant's obligation to pay "Loss on behalf of" either the Team Members or Empirical is triggered where there is both (1) a Claim, as defined by the Policy, against either Empirical or the Officers and (2) Losses, as defined in the Policy. Because Defendant's responsibility to pay under the Policy is only triggered where there is a Claim and a Loss, the Court considers whether the Plaintiff properly alleges the existence of both.

*i. Whether the Complaint Alleges a "Claim" Against an Insured Entity*

The Policy specifies a "Claim" is a "written demand against the Insured for monetary damages or non-monetary or injunctive relief[.]"[6] (Doc 10-2, p. 24.) Plaintiff asserts that the Complaint alleges a Claim existed to trigger the Policy; however, Plaintiff does not clearly identify

---

[6] The Policy contains five other definitions of "Claim," none of which are implicated here and all of which involve either legal proceedings by a security holder of Empirical or some degree of federal or state executive branch intervention related to the underlying wrongful conduct. (Doc 10-2, p. 24, ¶ II.A.2-6.)

6

what written document constitutes the Claim.[7] The Court discerns two possibilities: (1) that the Letters sent to Defendant are the Claim or (2) that the Complaint filed in the Receivership Action constitutes the Claim.

But the Letters Plaintiff sent to Defendant cannot be a Claim under the Policy's definition. For the Letters to constitute a Claim, they would have to be written demands against the Officers or Empirical, which is not how the Complaint characterizes them. (*See* Doc. 1-2, ¶ 14.) While these letters outlined the wrongful conduct of the Officers, they were not a demand *against the insured* but rather a demand against the *insurer*. The Court need not discuss the substance of the letters because this fact alone means they cannot be a Claim, no matter their contents. Further, the Letters, as described in the Complaint, do not discuss any external Claim against Empirical or the Officers other than the Receivership Action. (*See* Doc. 1-2, ¶ 14.r.)

Because the vast majority of lawsuits include written demands for monetary or injunctive relief, the Petition in the Receivership Action could be a Claim for purposes of the Policy (although the Court has some concerns about whether the Receivership action qualifies).[8] However, even if the Receivership Action qualifies as such a Claim, as discussed below, Plaintiff fails to properly allege a Loss.

   *ii. Whether the Complaint Alleges a "Loss"*

---

[7] Plaintiff ascribes many different meanings to the terms "claim" and "loss" in its Complaint and briefing, including using broad colloquial and legal meanings. For purposes of the Policy and its interpretation, the terms "Claim" and "Loss" are defined, thus, the Court will use the definitions included in the Policy.

[8] While not discussed by the parties, the Court notes that under the Policy, Defendant is exempted from paying for Losses resulting from any Claims "[b]ased upon, arising out of, or attributable to any actual or alleged liability of the Insured [Entities] under any written contract or agreement, except to the extent that the Insured [Entities] would have been liable in the absence of such contract or agreement[.]" (Doc. 10-2, p. 29-30.) The causes of action Enterprise Bank asserted in the Receivership Action are (1) the request for receivership, (2) a suit on note, which essentially requests that the court enforce the loan contract, (3) replevin, and (4) a foreclosure of the securities. These Claims do not seek relief beyond that available for breaching the loan contracts, so it is possible that no claim in the Receivership Action would be covered by the Policy. While the Officers' alleged wrongdoing *could* lead to other Claims which would not be contract-based, none are identified in the Petition which initiated the Receivership Action.

7

Plaintiff asserts Defendants are obligated to pay the lost profits, stolen funds, and the money Officers improperly advanced from Empirical's customers as Losses under the Policy, but these losses do not constitute Losses under the Policy. To trigger coverage under the Policy, a Loss must (1) arise from a "Claim" and (2) Empirical or the Officers must be "legally obligated to pay" it. (Doc. 10-2, p. 26.) As discussed above, the only possible Claim in this case is the Receivership Action, so a Loss to trigger the Policy would have to be a legal obligation to pay arising from the Receivership Action. There is no allegation that the Receivership Action has yet resulted in any legal obligation for Empirical to pay anyone.[9] Therefore, even if the Receivership Action constitutes a Claim, the Complaint does not allege a Loss to trigger coverage.

### III. CONCLUSION

Without a Loss to trigger the obligation to pay, Defendant could not have breached the Policy as Plaintiff alleges. Therefore, Count I, the breach of contract claim, and Count II, the vexatious refusal to pay claim, must be dismissed. Accordingly, the Motion to Dismiss, (Doc.7), is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
Date: July 22, 2025                     UNITED STATES DISTRICT COURT

---

[9] Even if a judgment or settlement in the Receivership Action is ever reached and the Policy applies to that judgment, Plaintiff will not receive the full extent of the relief they claim Defendant owes them. The Receivership Action would never create a legal obligation for Empirical to pay itself its lost profits or the money stolen from it, so much of what Plaintiff requests would never result in a Loss from this Claim.