**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| BRENT KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25-00150-CV-W-BP |
| | ) | |
| TEXAS INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING (1) MOTION TO ALTER JUDGMENT AND
(2) MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Plaintiff Brent King, in his capacity as receiver of Empirical Prime, LLC and its subsidiaries ("Empirical"), brought this suit to enforce an insurance policy issued by Defendant, Texas Insurance Company. Defendant filed a Motion to Dismiss, which the Court granted. (Doc. 23.) Plaintiff has now filed a Motion to Alter Judgment, (Doc. 27), and a Motion For Leave to File a First Amended Complaint, (Doc. 29), which are both **DENIED**.

## I. BACKGROUND

The Court set forth the background to this suit in its Order granting Defendant's Motion to Dismiss (the "Prior Order"). The reader's familiarity with the Prior Order is assumed and a brief summary is sufficient for present purposes (and portions of the Prior Order may be repeated here without attribution).

According to the Complaint,[1] Empirical borrowed money from Enterprise Bank and Trust, LLC ("Enterprise Bank"). The loan agreement prohibited Empirical from borrowing from other banks during the pendency of the loan. Despite this prohibition, several of Empirical's officers (the "Officers") borrowed millions of dollars on behalf of Empirical from other banks. The

---

[1] With the case in federal court, federal terms will be used.

Officers engaged in other misconduct as well, causing financial damage to Empirical and eventually leading to Empirical's default on the loan. Enterprise Bank then initiated proceedings against Empirical in state court, which led to Empirical being placed in receivership (the "Receivership Action").

Defendant had previously issued Empirical a Directors, Officers, & Organization Liability Insurance Policy (the "Policy"). Three coverage provisions are relevant to this case; they provide that Defendant will pay for:

1. "Loss on behalf of the [Officers] resulting from a Claim first made against the Team Members . . . for a Wrongful Act by the [Officers;]"

2. "Loss on behalf of the Insured Organization that such Insured Organization has indemnified the [Officers] resulting from a Claim first made against the [Officers] . . . for a Wrongful Act by the [Officers;]"

3. "Loss on behalf of the Insured Organization resulting from a Claim first made against such Insured Organization . . . for a Wrongful Act by the Insured Organization."

(Doc. 10-2, p. 23.)[2] "Loss" is defined as "the amount that an Insured is legally obligated to pay resulting from a Claim, including damages, settlements, judgments, pre- and post-judgment interest, Defense Costs, and Investigation Costs." (Doc. 10-2, p. 26.) A "Claim" is a "[w]ritten demand against the Insured for monetary damages or non-monetary or injunctive relief, including a written request to toll or waive a statute of limitations or engage in any alternative dispute resolution." (Doc. 10-2, p. 24.) However, the Policy explicitly exempts from coverage any claims "[b]ased upon, arising out of, or attributable to any actual or alleged liability of the Insured Organization under any written contract or agreement[.]" (Doc. 10-2, p. 29-30.)

Plaintiff, as Empirical's receiver, sent two letters (the "Claims Letters") to Defendant outlining the Officers' wrongdoing and claiming that Defendant owed Empirical under the Policy

---

[2] All page numbers correspond to those listed in the CM/ECF system.

because it had a duty to compensate Empirical for losses created by the Officers' alleged misconduct. (Doc. 1-2, ¶¶ 13-14, 21-23.) The Letters allegedly "provided Defendant with extensive factual details and documentary evidence . . ." (Doc. 1-2, ¶ 14.) When Defendant did not respond or pay, Plaintiff filed this suit seeking compensation under the Policy for the losses resulting from the Officers' misconduct. In its Motion to Dismiss, Defendant argued both that Plaintiff lacked standing and that Defendant was not obligated to pay under the Policy and the case should be dismissed. The Court agreed with Defendant that Plaintiff failed to state a claim.

The Court first held that the Claims Letters could not constitute a "Claim" under the Policy because they were not written demands directed *to* the Insured; they were written demands *from* the Insured *to* the Insurer. (Doc. 23, p. 7.) The Court further held that the Receivership Action might qualify as a Claim, but even if it did a Loss (as defined in the Policy) was not alleged. (Doc. 23, p. 7.) As the Court explained: "To trigger coverage under the Policy, a Loss must (1) arise from a 'Claim' and (2) Empirical or the Officers must be 'legally obligated to pay' it." (Doc. 23, p. 8 (quoting 10-2, p. 26).) However, the Complaint did not allege "that the Receivership Action has yet resulted in any legal obligation for Empirical to pay anyone." (Doc. 23, p. 8.) The Court further conceded the possibility that such an obligation might arise in the future, at which point a valid Claim might be possible—although the scope of Plaintiff's recovery might not be as broad as it alleged in this case. (Doc. 23, p. 8 n.9.)[3]

Plaintiff asks Court to reconsider the Prior Order and deny Defendant's Motion to Dismiss. He also asks the Court to grant him leave to file an Amended Complaint. Defendant opposes both Motions, and the Court resolves the parties' arguments below.

---

[3] The Court's statement was supported by its observation that many of the Complaint's allegations focused on damage the Officers caused to Empirical (as opposed to damage the Officers caused to others for which Empirical could be legally responsible). (*See* Doc. 1-2, ¶¶ 14(s)-14(aa); 15-20.)

## II. DISCUSSION

### A. Motion for Reconsideration

The Court has discretion to reconsider the Prior Order. *E.g.*, *Preston v. City of Pleasant Hill*, 642 F.3d 646, 652 (8th Cir. 2011). Plaintiff invokes Rule 59 of the Federal Rules of Civil Procedure, which "serve[s] the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *Holder v. United States*, 721 F.3d 979, 986 (8th Cir. 2013) (cleaned up). However, "[s]uch motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment, *id*. (quotation omitted), and they are "not a vehicle for simple reargument on the merits." *Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999). The Court concludes Plaintiff's Motions should be denied.

Plaintiff first accuses the Court of raising the grounds for dismissal *sua sponte*, without providing it notice or an opportunity to respond. This characterization is simply wrong. Defendant presented arguments it characterized as jurisdictional along with arguments based on the merits, but all such arguments were based on state law. While the Court rejected Defendant's argument that it lacked jurisdiction (because this Court's jurisdiction is set by Article III of the Constitution and statutes passed by Congress, not by state law), the substance of Plaintiff's jurisdictional arguments related to the merits as well. Defendant's initial Suggestions in Support argued, among other things, that Plaintiff had not alleged there was a "Claim" or "Loss" within the meaning of the Policy. (*E.g.*, Doc. 8, pp. 4-6, 8, 11-12; *see also* Doc. 12, pp. 5-12.) Moreover, Plaintiff's overarching argument that Plaintiff was seeking "first-party" coverage when the Policy provides only for "third-party liability coverage" incorporates these same concepts; the Court simply elected to discuss the specific Policy provisions cited instead of relying on broader characterizations of

"third-party" and "first-party" liability. And not only did Defendant raise the issue, but Plaintiff addressed it, (*see* Doc. 10, pp. 5, 9-11), which he concedes. (Doc. 28, p. 4 (Plaintiff stating he "identified the Claims under the Policy in [his] briefing opposing Defendant's motion to dismiss, including citing to the allegations in the Complaint.").) The Court therefore did not dismiss Plaintiff's claims based on arguments it raised *sua sponte*.

With respect to the dismissal's merits, Plaintiff primarily reiterates his prior arguments. As stated earlier, the Policy defines a "Claim" as a written demand directed to the insured. The Court referred to the letters Empirical sent to Defendant and observed they did not qualify. In his Motion to Alter Judgment, Plaintiff insists that paragraph 14 of the Complaint alleges "[t]he Claim Letters provided Defendant with extensive factual details and documentary evidence of the claims against the Insured Organizations by lenders and customers . . . ." (Doc. 28, p. 4 (emphasis removed).) This is not exactly what paragraph 14 says, (*see* Doc. 1-2, ¶ 14), but it does not aid Plaintiff in any event. The Complaint defines what it meant when it used the phrase "Claims Letters": "On October 10, 2024, Plaintiff sent two letters to Defendant making claims on behalf of the Insured Entities under the Policy (the 'Claims Letters')." (Doc. 1-2, ¶ 13 (emphasis removed).) Thus, the Complaint alleges *Plaintiff sent* the Claims Letters *to Defendant*; it does not allege that the Claim Letters were *sent to Plaintiff*. Finally, as explained above, the Court considered the possibility that the Receivership Action itself constituted a Claim and therefore considered whether a "Loss" (as defined in the Policy) was alleged. And to reiterate: the Policy defines "Loss" as "the amount that an Insured *is legally obligated to pay resulting from a Claim* . . . ." (Doc. 10-2, p. 26 (emphasis supplied).) Plaintiff does not identify any allegations in the Complaint that Empirical has been legally required to pay a Claim.[4]

---

[4] The Court reiterates a point it made in the Prior Order: "Plaintiff ascribes many different meanings to the terms 'claim' and 'loss' in its Complaint and briefing, including using broad colloquial and legal meanings. For purposes

For these reasons, the Motion to Alter Judgment is denied.

### B. Motion for Leave to Amend

In his Motion for Reconsideration, Plaintiff also argues the Court's decision to raise arguments *sua sponta* justifies permitting him to file an Amended Complaint. (Doc. 28, p. 6.)[5] He also filed a separate Motion for Leave to File First Amended Complaint, so that he can "clarify the factual allegations already pled in the original Complaint." (Doc. 29, ¶ 3.) The Motion, (Doc. 29), is denied.

As explained above, the Court did not dismiss based on issues it raised *sua sponte*. Moreover, motions to amend the pleadings after judgment has been entered are disfavored and "interests of finality dictate that leave to amend should be less freely available after a final order has been entered." *Par v. Wolfe Clinic, P.C.*, 70 F.4th 441, 449 (8th Cir. 2023). And this is not a case where such leave should be granted, given that the proposed Amended Complaint does not remedy the issues that led to the original Complaint's dismissal. Plaintiff points to paragraphs 16.*l* and *s* as constituting allegations that "lenders and customers have had claims for losses against the Insured Organizations." (Doc. 34, p. 1.) Paragraph 16.*l* alleges "Enterprise and other lenders have made written claims for losses in the millions resulting from the Insured Organization[s'] Wrongful Acts." (Doc. 29-1, ¶ 16.*l*.) Paragraph 16.*s* alleges "[t]he value of customers' losses exceeds $1 million, with individual losses ranging from $40,000 to $325,000 per customer." (Doc. 29-1, ¶ 16.*s*.) Even if paragraph 16.*l* is sufficiently specific to allege that Empirical has received "Claims," paragraph 16.*s* does not describe "amount[s] that an Insured is legally obligated to pay

---

of the Policy and its interpretation, the terms "'Claim' and 'Loss' are defined, thus, the Court will use the definitions included in the Policy." (Doc. 23, p. 7, n.7.) In other words, Plaintiff often uses the dictionary definitions of "claim" and "loss," but the Court must apply the definitions contained in the Policy.

[5] Plaintiff also contends that Defendant did not cite these (or any) grounds for declining to pay, so he could not have known he needed to address them in his Complaint. (Doc. 28, p. 6.) The Court disagrees; Plaintiff is asserting a claim for breach of contract, which required him to plead that the Policy obligated Defendant to pay.

resulting from a Claim, including damages, settlements, judgments, pre- and post-judgment interest, Defense Costs, and Investigation Costs." (*See* Doc. 10-2, p. 26 (Definition of "Loss").) For these reasons, Plaintiff's request for leave to file an Amended Complaint after judgment is denied.

### III.  CONCLUSION

The Motion to Alter Judgment (Doc. 27) is **DENIED**, The Motion for Leave to File First Amended Complaint (Doc. 29) is also **DENIED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
Date: November 3, 2025                    UNITED STATES DISTRICT COURT

7